NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 31

No. 2015-221

| | |
|---|---|
| Matthew Burgess | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Lamoille Unit, |
| | Civil Division |
| | |
| Lamoille Housing Partnership, Town of Morristown, | October Term, 2015 |
| Mary Ann Wilson as Collector of Taxes and | |
| Sharon Green, Esq. | |

Timothy B. Tomasi, J. (motion to dismiss); Dennis R. Pearson, J. (final judgment)

Matthew A. Burgess, Pro Se, Morristown, Plaintiff-Appellant.

Graham Hayes Govoni of Black & Govoni, PLLC., Morrisville, for Defendant-Appellee
  Lamoille Housing Partnership, Inc.

James R. Dean Mahoney of Polow Polow & Mahoney, PLLC, Hyde Park, for
  Defendants-Appellees Town of Morristown and Wilson.

Thomas M. Higgins of Pierson Wadhams Quinn Yates & Coffrin, LLP, Burlington, for
  Defendant-Appellee Green.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1. **REIBER, C.J.** Plaintiff Matthew Burgess appeals decisions of the superior court's civil division dismissing certain defendants and granting summary judgment to another defendant with respect to plaintiff's claim that he is entitled to either a tax collector's deed conveying him property he redeemed from foreclosure or damages compensating him for not being conveyed the deed. We affirm.

¶ 2.    In September 2001, plaintiff's parents, John and Virginia Burgess, mortgaged property located in defendant Town of Morristown through defendant Lamoille Housing Partnership, Inc. (LHP), a nonprofit corporation that assists people in finding affordable housing. The Burgesses purchased the property through LHP's Home Land Program, by which ownership of the underlying land was severed from ownership of the house in which the Burgesses resided. Under the arrangement, a warranty deed from the U.S. Department of Agriculture Rural Development conveyed the land and improvements to the Burgesses, who granted a mortgage deed to the USDA Rural Development encumbering both the land and improvements. The Burgesses then conveyed the land to LHP, retaining only the title to the improvements. LHP and the Burgesses then entered into a ground lease granting the Burgesses a leasehold interest in the land for a ninety-nine-year term subject to certain terms and conditions, including that the Burgesses pay the property taxes on the entire property.

¶ 3.    The Burgesses later disputed their obligation to pay property taxes and, in August 2009, filed a declaratory judgment action against the Town and LHP, claiming that their residential home should be exempt from real estate taxes and that the taxes they had paid entitled them to an ownership interest in the land itself, thereby extinguishing LHP's rights. A three-justice panel of this Court upheld the trial court's determinations that the Burgesses lacked standing to challenge the Town's taxation of the property and that their payment of taxes on the land, pursuant to their agreement with LHP, did not give them an ownership interest in the land. See Burgess v. Lamoille Housing Project, No. 2010-396, 2011 WL 4975238, at *3-4 (Vt. April 21, 2011) (unpub. mem.), http://www.vermontjudiciary.org/LC/unpublishedeo.aspx.

¶ 4.    When that litigation concluded, the Burgesses' property taxes were delinquent. In 2012, the Morristown town clerk, defendant Mary Ann Wilson, in her role as delinquent tax collector, hired defendant Attorney Sharon Green to conduct a tax sale of certain properties,

including the Burgess property. On February 2, 2012, the tax sale was conducted by Attorney Green acting as counsel for the Town. Plaintiff, acting in his own right rather than as an agent for his parents, made a bid at the tax sale, but his bid was not the highest. The property was purchased by Winston Jennison Investments, LLC, for $2500, subject to its possible redemption. LHP, the record owner, apparently did not attend or participate in the tax sale. Two weeks after the tax sale, plaintiff tendered a check for $1373 to Attorney Green. Plaintiff's letter accompanying the check stated that the check was being "tendered in reliance on your representations that said enclosed amount is full and final satisfaction for redemption of subject property located at 352 Jersey Heights, in Morristown, Vermont." After the check was delivered, the town clerk's office issued plaintiff a certificate of redemption stating that the amount required to redeem the property owned by LHP was paid on February 21, 2012. The certificate was then recorded in the Town land records. As the result of the redemption, the Burgesses continued to reside at their home pursuant to their lease with LHP.

¶ 5. In December 2013, plaintiff filed a complaint against the Town and the town clerk (municipal defendants), LHP, and Attorney Green, listing as counts declaratory judgment and equitable relief, negligent misrepresentation, breach of contract, and promissory estoppel. The complaint alleged that on February 21, 2012, Attorney Green, in her capacity as attorney and agent for the municipal defendants, told plaintiff that if he submitted to her $1373 he would acquire a right to receive a tax collector's deed to the subject parcel one year and a day after the date of the tax sale. It further stated that in reliance upon Attorney Green's representation, plaintiff issued Attorney Green a check for that amount, and that she gave him a certificate of redemption, but declined to have the Town deliver to him a tax collector's deed one year and a day after the tax sale, as promised. The complaint asked the court to enter a declaratory judgment that he is entitled either to a tax collector's deed conveying the subject property to him

3

or damages in an amount equal to the value of the subject property, which he indicated was $50,000.

¶ 6.    On April 24, 2014, the superior court: (1) denied plaintiff's request for injunctive or declaratory relief against the municipal defendants because they were not legally authorized under Vermont law to transfer the property to him; (2) dismissed LHP as a party because plaintiff had failed to state any legally cognizable claim against it; (3) denied the municipal defendants' motion to dismiss on immunity grounds, concluding that although the municipal defendants were entitled to immunity based on plaintiff's allegations, plaintiff should be allowed limited discovery on the issue of whether the Town had purchased insurance that covered his claims and thus waived its immunity pursuant to 29 V.S.A. § 1403; (4) denied Attorney Green's motion to dismiss based on her claim of qualified immunity; and (5) granted Attorney Green's motion to dismiss plaintiff's breach-of-contract and promissory-estoppel counts, but denied her motion to dismiss plaintiff's negligent-misrepresentation count.

¶ 7.    On February 6, 2015, the superior court, with a different judge presiding, granted the municipal defendants' renewed motion to dismiss based on its determination that the Town had not waived its municipal immunity and that plaintiff failed to state any specific facts in his complaint that would make the town clerk personally and independently liable on any recognized legal theory.  On May 20, 2015, the superior court denied defendant's motion to reconsider the dismissal of LHP as a defendant and granted Attorney Green's motion for summary judgment on plaintiff's negligent representation claim, ruling that Attorney Green's legal duty was to the Town and not plaintiff, and that plaintiff's reliance upon Attorney Green's alleged misrepresentation was not reasonable.  That same day, the superior court entered a final judgment in favor of all of the defendants.

4

¶ 8.     On appeal, plaintiff argues that the superior court erred by granting LHP's and the municipal defendants' motions to dismiss and by granting Attorney Green's motion for summary judgment. Plaintiff first argues that the court should have kept LHP in the case pursuant to the equitable doctrine of unjust enrichment. According to plaintiff, LHP was unjustly enriched by retaining title to the subject property after he redeemed the property. He states that the superior court should have kept LHP in the case until a factfinder determined whether his complaint was proven so that the property could be held in a constructive trust for his benefit.

¶ 9.     We agree with LHP that plaintiff failed to raise any equitable claim of unjust enrichment in his complaint and thus has not preserved this claim of error for appeal. See Bull v. Pinkham Eng'g Assocs., 170 Vt. 450, 459, 752 A.2d 26, 33 (2000) ("Contentions not raised or fairly presented to the trial court are not preserved for appeal.").

¶ 10.    Plaintiff points out that in denying his motion to reconsider the dismissal of LHP, the superior court addressed plaintiff's claim of unjust enrichment, stating that LHP did not unfairly receive any benefit that it should be forced to give up or pay compensation for, but rather was simply restored to the position it always had—continued ownership of the underlying parcel of land. To the extent that the superior court's statement in its ruling on plaintiff's motion for reconsideration preserved this claim of error by plaintiff, we agree with the superior court's assessment. The fact that LHP may have benefitted from plaintiff's decision to redeem the property—even assuming that plaintiff redeemed the property because Attorney Green informed him that he could obtain a tax collector's deed by doing so—does not suggest that LHP was unjustly enriched. See Legault v. Legault, 142 Vt. 525, 529, 459 A.2d 980, 983 (1983) (stating that, in determining whether to impose constructive trust based on equitable doctrine of unjust enrichment, "the true question" is not whether party has received benefit, but rather whether party can retain benefit with "a safe conscience" (quotation omitted)); see also Brookside

Memorials, Inc. v. Barre City, 167 Vt. 558, 560, 702 A.2d 47, 50 (1997) (mem.) ("In determining whether a quasi-contract should be implied under an equitable theory of unjust enrichment, the inquiry is whether, in light of the totality of the circumstances, equity and good conscience demand that defendant return that which the plaintiff seeks to recover."). As we conclude below, plaintiff was not entitled to any declaratory or injunctive relief from the municipal defendants. Accordingly, there is no possible relief impacting LHP's retention of title to the land.

¶ 11. Next, plaintiff challenges the superior court's decision to dismiss the municipal defendants. He argues that towns are not immune from declaratory or injunctive relief and both the Town and the town clerk are necessary parties to his action seeking a declaration that he should be issued a tax collector's deed for the subject property. We find no merit to these arguments. As the superior court concluded, plaintiff has no right to the injunctive and declaratory relief he seeks against the municipal defendants—issuing him a tax collector's deed to the subject property—because neither the Town nor the town clerk are legally authorized under Vermont law to transfer the property to him. Following the tax sale of real property, the owner or mortgager of the property, or his or her representative or assigns, has a year and a day to redeem the property, 32 V.S.A. § 5260, during which period the purchaser at the tax sale has only a contingent interest in the property. It is only when a property is not redeemed within the statutory period that a tax collector "shall execute to the purchaser a deed, which shall convey to him or her a title against the person for whose tax it was sold and those claiming under him or her." 32 V.S.A. § 5261. On the other hand, if the property is timely redeemed, it is restored to the original owner free and clear of any claims of the person who "purchased" it at the tax sale. Redemption extinguishes the contingent interest of the tax sale purchaser—nothing more. 32 V.S.A. § 5260 (providing that when property is redeemed following tax sale, "a deed of the land

shall not be made to the purchaser"). In short, even accepting as true that Attorney Green made the statements alleged in plaintiff's complaint, no legal or equitable theory would permit the superior court to declare plaintiff the owner of the subject property or order transfer of the property to him.

¶ 12. Plaintiff also sought monetary damages against the municipal defendants in the alternative.[1] In its April 24, 2014 decision, the superior court concluded that the municipal defendants were immune from plaintiff's lawsuit for their actions related to the tax sale of the subject property, unless the Town had waived its immunity under 29 V.S.A. § 1403, which provides that a municipality waives its immunity to the extent of coverage available under a policy of liability insurance that it has purchased. See Graham v. Town of Duxbury, 173 Vt. 498, 499, 787 A.2d 1229, 1232 (2001) (mem.) (stating that municipal immunity shields municipalities "from tort liability in cases where the municipality fulfills a governmental rather than a proprietary function"). In that April 24 decision, the superior court permitted plaintiff limited discovery solely on the issue of whether the Town had purchased insurance that provided coverage against his claims.

¶ 13. More than nine months later, in its February 6, 2015 decision, the superior court treated defendants' motion to dismiss as a motion for summary judgment and concluded that the Town had not waived its immunity because: (1) on the record before it, the Town's insurance policy did not specifically cover plaintiff's claims; and (2) no waiver resulted simply from the Town purchasing general liability insurance from the Vermont League of Cities and Towns (VLCT) pursuant to subchapter Chapter 121, Subchapter 6, of Title 24 concerning intermunicipal

---

[1] We note that, although plaintiff sought $50,000 in damages representing his assessment of the value of the subject property, the maximum liability that could be imposed based on his negligent misrepresentation claim is his pecuniary loss, which appears to be $1372.43. See Restatement (Second) of Torts § 552B (1977) (stating that damages for negligent misrepresentation are limited to pecuniary loss caused by misrepresentation, including consequential damages, but do not include damages for benefit of contract).

insurance agreements. See 24 V.S.A. § 4946 (stating that participation in intermunicipal insurance agreement under statutory scheme shall not "constitute a waiver of sovereign immunity under 29 V.S.A. § 1403"). The Town submitted an affidavit stating that it had received a December 20, 2013 letter from VLCT advising that the Town was not specifically insured for the claims asserted by plaintiff. The court stated that the letter and the underlying policy had been provided to plaintiff in late January 2014, but plaintiff had not requested any further discovery on the subject. The court rejected plaintiff's bare assertion that there was a genuine issue of material fact as to whether the Town's insurance covered his claims, ruling that, as it stands, the record establishes that the Town's insurance policy does not cover plaintiff's claims. See White v. Quechee Lakes Landowners' Ass'n, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999) (stating that party opposing summary judgment may not rest upon "mere allegations," but must set forth specific facts showing that there is genuine issue for trial).

¶ 14. Plaintiff does not challenge the superior court's reasoning, but rather argues that Towns are not immune from declaratory or injunctive relief and that the municipal defendants are necessary parties under 12 V.S.A. § 4721, which provides that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." Towns may not be generally immune from declaratory or injunctive relief, but as the superior court concluded, the Town had no authority to provide the declaratory and injunctive relief plaintiff sought in his complaint. Nor does § 4721 help plaintiff's cause. This statute does not apply because, as discussed above, the superior court had already properly dismissed plaintiffs' claims for declaratory and injunctive relief when it dismissed the municipal defendants from the case. In short, declaratory relief was not available to plaintiff, and thus § 4721 is inapplicable. In any event, the Town's liability hinges on that of Attorney Green, and we agree with the superior court that she has no liability to plaintiff.

8

¶ 15. We now turn to plaintiff's negligent misrepresentation claim against Attorney Green. In its May 20, 2015 decision, the superior court granted summary judgment to Attorney Green on this claim, ruling, as a matter of law, that Attorney Green owed no duty to plaintiff and that plaintiff could not justifiably rely upon her alleged misrepresentation. The court labeled plaintiff's claim a professional negligence claim, which, according to the court, required plaintiff to establish privity between Attorney Green and himself, unless he could show that the Town intended that he was to directly benefit from her employment and therefore could reasonably rely upon her professional representations. The court concluded that it was undisputed that Attorney Green was hired solely to act on behalf of the Town, with no intent to benefit plaintiff, and thus no duty was owed and plaintiff's reliance upon her alleged misrepresentation was not reasonable.

¶ 16. On appeal, plaintiff argues that there are disputed material facts that preclude summary judgment on this claim, principally that Attorney Green made the alleged statement and that he justifiably relied upon it. He also argues that considerations of equity compel denial of Attorney Green's motion for summary judgment because LHP retained title to the subject property without defending its title interest even though he redeemed the property based on Attorney Green's statement that he would be issued a tax collector's deed if he did so. In addition, he argues that the court erred by granting summary judgment to Attorney Green—after a previous judge had declined to dismiss the negligent misrepresentation count—by mischaracterizing his claim as a professional negligence claim and by considering the affidavit of Attorney Green's expert in the context of the summary judgment motion. Attorney Green responds by arguing that: (1) she owed no duty of care to plaintiff; (2) plaintiff could not have reasonably relied upon the alleged misrepresentation; (3) plaintiff failed to disclose an expert to support his claim; (4) she is protected by qualified immunity; and (5) the undisputed facts do not support a claim of negligent misrepresentation.

¶ 17. In reviewing a decision granting summary judgment, this Court applies the same standard as that applied by the trial court—the decision will be upheld if, viewing the evidence most favorably to the nonmoving party, there are no genuine disputed issues of material fact and the prevailing party is entitled to judgment as a matter of law. Glassford v. Dufresne & Assocs., 2015 VT 77, ¶ 10, ___ Vt. ___, 124 A.3d 822. "Summary judgment is mandated . . . where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to [the party's] case and on which [the party] has the burden of proof at trial." Poplaski v. Lamphere, 152 Vt. 251, 254-55, 565 A.2d 1326, 1329 (1989) (quotation omitted). Although the party opposing summary judgment is given the benefit of all reasonable doubts and inferences in determining whether there are disputed genuine issues of material fact, the moving party may not "rely on bare allegations alone to meet the burden of demonstrating a disputed issue of fact." Webb v. Leclair, 2007 VT 65, ¶ 14, 182 Vt. 559, 933 A.2d 177 (mem.).

¶ 18. As an initial matter, we agree with the superior court that a previous decision by another judge denying Attorney Green's motion to dismiss did not preclude the court from granting Attorney Green's motion for summary judgment. In denying Attorney Green's motion to dismiss in its April 24, 2014 decision, the superior court held that, with respect to her claimed qualified immunity, there were factual disputes as to whether Attorney Green was acting within the scope of her employment and in good faith,[2] and that plaintiff's assertions of negligent misrepresentation were sufficient to avoid dismissal on the pleadings under Vermont law. More

_____

[2] In its May 20, 2015 decision, the superior court did not consider the issue of qualified immunity, perhaps because, assuming Attorney Green made the alleged misrepresentation, her good faith would be in doubt. See Murray v. White, 155 Vt. 621, 630, 587 A.2d 975, 980 (1991) (stating that good faith depends "on the objective reasonableness of an official's conduct, as measured by reference to clearly established law" (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))).

than a year later, a different presiding superior court judge granted Attorney Green's motion for summary judgment.

¶ 19.   As the superior court pointed out in rejecting plaintiff's argument that the earlier ruling was the "law of the case" and could not be disturbed, the standards for dismissing a case on the pleadings and granting summary judgment are distinct.  See Mello v. Cohen, 168 Vt. 639, 641, 724 A.2d 471, 474 (1998) (mem.) (explaining different standards for reviewing motions to dismiss as opposed to motions for summary judgment, and stating that "[e]ven though a plaintiff's allegations present a cognizable claim sufficient to withstand a motion to dismiss, the same allegations may well prove insufficient to withstand a motion for summary judgment"); see also Huntley v. Young, 462 S.E.2d 860, 861 (S.C. 1995) (per curiam) ("The denial of a Rule 12(b)(6) motion does not establish the law of the case nor does it preclude a party from raising the issue at a later point or points in the case.  Since the order denying the Rule 12(b)(6) motion does not finally decide any issue, it is not directly appealable.").  Indeed, even if the previous judge had denied an earlier motion for summary judgment based on the same information, we have explicitly held that a second judge may grant a motion for summary judgment or judgment on the pleadings after denial of a similar motion by another judge.  Morrisseau v. Fayette, 164 Vt. 358, 363, 670 A.2d 820, 823-24 (1995) (explaining that judges should not be required to perpetuate error or take more roundabout way to arrive at necessary judgment); see also Converse v. Town of Charleston, 158 Vt. 166, 169, 605 A.2d 535, 537 (1992) (stating that "law of the case" doctrine did not preclude trial judge from directing verdict for town at trial even though pretrial judge denied town's motion summary judgment on same issue).

¶ 20.   Plaintiff also contends that the superior court erred by transforming his negligent misrepresentation claim into a professional malpractice claim.  We need not address this contention because we agree with the superior court that, apart from the issue of whether

11

Attorney Green owed a duty to plaintiff, plaintiff cannot prevail on his negligent misrepresentation claim because, under the circumstances of this case, he cannot show that he justifiably relied upon the statements he alleges that Attorney Green made.

¶ 21.   With respect to the common law tort of negligent misrepresentation, we have adopted the Restatement (Second) of Tort § 552(1) (1977), which provides as follows:

> One who, in the course of his [or her] business, profession or employment, or in any other transaction in which he [or she] has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he [or she] fails to exercise reasonable care or competence in obtaining or communicating the information.

Here, the superior court concluded in the alternative that, under the circumstances of this case, it was not reasonable as a matter of law for plaintiff, who was attempting to take commercial advantage of the opportunities allowed by the statutory tax sale procedures, to rely on statements by the taxing authority's attorney, particularly given plaintiff's acknowledgement that he was familiar with the tax sale redemption process.  See Sain v. Cedar Rapids Cnty. Sch. Dist., 626 N.W.2d 115, 125 (Iowa 2001) (noting that tort of negligent representation "is generally thought to only apply to business transactions").[3]

_____

[3]   Related to questions of duty and reliance is the requirement in § 552(1) that the defendant have a pecuniary interest with respect to the information given.  "If [the defendant] has no pecuniary interest and the information is given purely gratuitously, [the defendant] is under no duty to exercise reasonable care and competence in giving it."  Restatement (Second) of Torts § 552(1) cmt. c.  Giving the information "in the course of the defendant's business, profession or employment is a sufficient indication that [the defendant] has a pecuniary interest in it, even though [the defendant] receives no consideration for it," but is not "conclusive."  Id. cmt. d.  If the information is supplied purely gratuitously, the recipient of the information is not justified in relying upon it.  Id.  Here, plaintiff did not dispute the facts, as stated by Attorney Green in her affidavit and by the Town in its statement of undisputed facts, that the town clerk hired Attorney Green to conduct a tax sale of certain properties, including the subject property, and that she was compensated immediately after the tax sale by receiving fifteen percent of the delinquent tax, consistent with 32 V.S.A. § 5258 (allowing tax collector maximum of fifteen percent of uncollected tax for expenses actually and reasonably incurred by tax collector for legal assistance in preparation for and conduct of tax sale authorized by town selectboard).  Attorney Green did

¶ 22. We agree. Justifiable reliance is determined under an objective standard; we have upheld a jury instruction stating that "[p]laintiffs may justifiably rely upon a representation when the representation is not obviously false <u>and the truth of the representation is not within the knowledge of, or known by plaintiffs</u>." See <u>McGee v. Vermont Fed. Bank</u>, 169 Vt. 529, 531, 726 A.2d 42, 44-45 (1999) (mem.) (quotation omitted) (emphasis in original). In <u>McGee</u>, we held that the plaintiff homebuyers failed to state a cause of action for negligent representation against the defendant bank because they did not indicate in their pleadings that they were unable to verify information provided by the bank concerning the status of home insurance coverage or that they could not have obtained that information directly from the sellers or the insurance company. <u>Id</u>. at 531, 726 A.2d at 45.

¶ 23. Here, plaintiff does not dispute the superior court's finding that he "asserted that he was familiar with the tax sale redemption process, and thus was in a position to know, or at least ascertain the falsity of any representation made to him by Attorney Green." Nor does plaintiff dispute Attorney Green's statements, which were based on plaintiff's resume and deposition testimony, that plaintiff "has a college degree in legal assisting and has worked as a paralegal for ten years" and "educated himself as to the tax sale and redemption process by reading the relevant statutes and case law" during a seven-year period when he worked as the credit manager for a gas company. As indicated above, the governing statutes plainly delineate what redemption entails—extinguishment of the tax sale purchaser's contingent interest in the subject property—and the circumstances under which a tax collector's deed can issue—when the subject property is not redeemed. Thus, a simple review of the governing statutes reveals that redemption of property sold at a tax sale does not entitle the redeeming party to a collector's deed. Indeed, the alleged statement attributed to Attorney Green makes no sense because it

not receive any further compensation in connection with the tax sale of the subject property or her contact with plaintiff.

13

would allow any person to obtain title to a property following a tax sale simply by paying the back taxes plus interest and fees, thereby depriving delinquent taxpayers of their statutory right to receive any overpayments and winning bidders of their contingent interest in the property. Under these circumstances, plaintiff cannot demonstrate justifiable reliance on the alleged statement made by Attorney Green. Cf. Restatement (Second) of Torts § 552A ("The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying.").

    Affirmed.

FOR THE COURT:

_____
Chief Justice
