Filed 05/15/24

VERMONT SUPERIOR COURT
Caledonia Unit
1126 Main Street Suite 1
St. Johnsbury VT 05819
802-748-6600
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 21-CV-01117

---

**Daniel Shaffer v. Heartbeet Lifesharing Corporation, et al**

---

## ENTRY REGARDING MOTION

Title:          Motion for Summary Judgment; Motion for Summary Judgment on CAUSATION - Joint; on Contract Claims (Motion: 14; 15)
Filer:          David M. Pocius; David M. Pocius
Filed Date:     March 21, 2024; March 21, 2024

The motion is GRANTED IN PART and DENIED IN PART.

### I.  Background

This matter is a negligence and wrongful death claim brought by Daniel Shaffer as administrator for his late son Jared Shaffer's estate.[1]  Jared Shaffer died at age 26 from undiagnosed and untreated testicular cancer.  Jared Shaffer had multiple disabilities, including autism, epilepsy, obsessive compulsive disorder, and anxiety, which affected his ability to communicate and left him unable to live independently.  Jared Shaffer, since turning 18, had lived in Vermont, at co-Defendant Heartbeet a Therapeutic Community Residence and working farm.  Heartbeet does not provide medical care to residents but instead contracted with co-Defendant Northeast Kingdom Human Services (NEKHS) to provide medical care to residents, including Jared Shaffer.

Defendants have filed two joint motions for summary judgment.  First, Defendants seek summary judgment as to counts I, II, III, V, VI, and VII (the tort law claims), arguing that Plaintiff has failed to demonstrate Defendants' actions were the proximate cause of Plaintiff's injury.  Second, Defendants seek summary judgment as to counts IV and VIII (the contract law claims), arguing that Plaintiff has not shown there was a contract between the parties that would entitle Plaintiff to recovery.   On May 10, 2024, Plaintiff and Defendant Heartbeet reached a settlement

---

[1]  This court has previously summarized many key facts in this matter in its Dec. 20, 2022 Entry Order.

that resulting the dismissal of counts I through IV.  This motion will focus on counts V through VIII, the remaining claims against remaining defendant, NKHS.

## II. Standard of Review

Vermont Rule of Civil Procedure 56 governs motions for summary judgment.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled judgment to as a matter of law."  V.R.C.P. 56(a).  See *Gross v. Turner*, 2018 VT 80, ¶ 8, 208 Vt. 112; *Gilman v. Maine Mut. Fire Ins. Co.*, 2003 VT 55, ¶ 7, 175 Vt. 554.  The moving party must support its assertion with numbered paragraphs with references to materials in the record.  V.R.C.P. 56(c)(1).  The nonmoving party must show that the material facts are in dispute.  *Boyd v. State*, 2022 VT 12, ¶ 19, 216 Vt. 272.  The nonmoving party does this through introducing their own admissible evidence.  *Gross*, 2018 VT 80, ¶ 8.  Additionally, the court gives the nonmoving party the benefit of reasonable doubts and inferences.  *Brousseau v. Brousseau*, 2007 VT 77, 182 Vt. 533.  If the court determines there are no genuine issues of material fact, the court will grant summary judgment.  V.R.C.P. 56.

## III. Legal Analysis: Motion for Summary Judgment on Causation

A claim for "common law negligence has four elements: a legal duty owed by defendant to plaintiff, a breach of that duty, actual injury to the plaintiff, and a causal link between the breach and the injury."  *Montague v. Hundred Acre Homestead, LLC*, 2019 VT 16, ¶ 14, 209 Vt. 514 (quoting *Stopford v. Milton Town Sch. Dist.*, 2018 VT 120, ¶ 12).

> The plaintiff bears the burden of producing evidence sufficient for a reasonable jury to conclude that the defendant's negligent action or omission caused the plaintiff harm.  *Collins v. Thomas*, 2007 VT 92, ¶ 8, 182 Vt. 250.  "Evidence which merely makes it possible for the fact in issue to be as alleged, or which raises a mere conjecture, surmise or suspicion, is an insufficient foundation for a verdict," and thus where the jury could only find for the plaintiff by relying on speculation, the defendant is entitled to judgment.  *Fuller v. City of Rutland*, 122 Vt. 284, 289 (1961).

*Bernasconi v. City of Barre*, 2019 VT 6, ¶ 11, 209 Vt. 419.

Defendants argue that, even if Plaintiff can establish duty, breach, and damages as required for a tort action, Plaintiff is unable to establish causation.  Specifically, Defendants argue that Plaintiff's primary evidence supporting causation, testimony from Daniel Shaffer,

would be inadmissible as a matter of law, and the remainder of Plaintiff's evidence would be insufficient to establish causation without requiring the jury to speculate.

### A. Daniel Shaffer's Testimony

Defendants contend Daniel Shaffer's testimony regarding what he "would have done" is inadmissible under the Vermont Rules of Evidence because such questions would address a hypothetical, thus the answers are necessarily outside the scope of his personal experience as a lay witness (Daniel Shaffer is not being presented as an expert).

However, "[a] witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior." *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 2023 WL 8280531, at *3 (S.D.N.Y. Nov. 30, 2023) (citing *United States v. Cuti*, 720 F. 3d 453, 459 (2d Cir. 2013)).

> The Federal Rules of Evidence allow the admission of fact testimony so long as the witness has personal knowledge, see Fed. R. Evid. 602, while opinion testimony can be presented by either a lay or expert witness, see Fed. R. Evid. 701 & 702. The initial question is therefore whether the contested testimony should be characterized as fact or opinion. "[T]he distinction between statements of fact and opinion is, at best, one of degree." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 168, 109 S.Ct. 439 (1988). We need not adopt verbatim Judge Posner's observation that "[a]ll knowledge is inferential, and the combined effect of [Federal] Rules [of Evidence] 602 and 701 is to recognize this epistemological verity but at the same time to prevent the piling of inference upon inference to the point where testimony ceases to be reliable" to acknowledge its essential truth. *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir.1990).

*Cuti*, 720 F.3d at 457–58.

Daniel Shaffer was Jared's co-guardian, therefore questions about how he would have acted in that role are based on his personal experience. Cf. *Burns v. Hanson*, 249 Conn. 809 734 A.2d 964, 973 (1999) (holding plaintiff's testimony about what she would have done was admissible where "[t]he plaintiff was not coming to the issue afresh on the witness stand, [s]he had personal experience…[t]he plaintiff's life experiences made her an appropriate witness to inform the jury about her choices.")

Defendants also argue that Daniel Shaffer's testimony is inadmissible because it is, inevitably, self-serving in nature (Daniel Shaffer, as a beneficiary of Jared's estate, has a direct interest in offering testimony supporting causation). In support, Defendants cite *Johnson v.*

*Washington Metropolitan Area Transit Authority*, which describes "certain circumstances" under which judges may prevent a jury from considering "testimony that is so undermined as to be incredible":

> [t]he removal of a factual question from the jury is most likely when a plaintiff's claim is supported solely by the plaintiff's own self-serving testimony, unsupported by corroborating evidence, and undermined either by other credible evidence, physical impossibility or other persuasive evidence that the plaintiff has deliberately committed perjury.

*Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125, 128–29 (D.C. Cir. 1989) (internal citations omitted). Defendants argue Mr. Shaffer's testimony is similarly unsupported, and therefore inadmissible. However, the proposition that Mr. Shaffer would have sought treatment for Jared is supported in the record: the parties agree that on April 16, 2017, Mr. Shaffer called Heartbeet and asked for Jared to be seen by his primary care provider when he returned to Vermont from Connecticut. See #54, Defs.' Statement of Undisputed Material Facts in Support of Defs.' Joint Mot. for Summary Judgment on Causation (filed Mar. 21, 2024) at 7.[2] Thus, the Court cannot say Mr. Shaffer's "would have" testimony is "so undermined as to be incredible." *Johnson*, 883 F.2d at 128–29.

Again, the opinion offered by lay witnesses such as Mr. Shaffer must be predicated on independently established evidence. See *Collector's Coffee*, No. 19-CV-4355 (VM), 2023 WL 8280531, at *3 (S.D.N.Y. Nov. 30, 2023) (noting that, to the extent plaintiff asked "what-if-you-had-known" questions *not independently established* by evidence, defendants could raise their objections at trial or explore them in cross-examination as appropriate" (emphasis added)). Finally, the inherently self-serving nature of Mr. Shaffer's testimony does not make it inadmissible but instead goes to the weight (credibility) of his claims, which jurors can assess during trial.

### B. *Other Causation Evidence (Dr. Sher, Dr. Lockridge, Mr. Provenza)*

Defendants argue that, without Mr. Shaffer's testimony, Plaintiff is unable to establish causation. As noted above, Mr. Shaffer's testimony is not categorically

---

[2] Although the parties dispute the details of this conversation (whether Daniel Shaffer requested Jared be seen for a blood workup, diagnosis, or treatment of an illness), the disputed details are not material. See #54, Pl's. Statement of Disputed Facts in Opposition to Def.'s Joint Mot. for Summary Judgment on Causation (filed April 19, 2024) at 14.

inadmissible. Further, Plaintiff's other evidence—even where it has been limited by the court—suggests that the facts regarding causation remain in dispute.

This court previously excluded some, but not all, of the testimony by Plaintiff's Expert Ralph Provenza. See generally, *Entry Regarding Motion* (filed Dec. 19, 2022). Specifically, the court excluded Mr. Provenza's testimony regarding causation, noting that Mr. Provenza "lacks the foundation to opine about causation—particularly whether or not Jared Shaffer would have died but for the inaction of support staff and medical personnel." Id at 6. The court has also limited the testimony of Dr. Sher (Jared Shaffer's primary care physician). See generally*, Entry Regarding Motion* (filed April 29, 2024).

However, the court's order of April 29 permitted the following evidence regarding Dr. Sher:

> Dr. [Sher] may still be questioned as a witness about his treatment and care of [Jared] Shaffer as well as what information was communicated to others in the course of the treatment, and it may be made explicit to the jury that Dr. [Sher] is not in the employ and does not work for either of the Defendants.

Id.

The court's exclusion of Mr. Provenza's causation testimony and limitation of Dr. Sher's testimony does not conclusively resolve the issue of causation in Defendants' favor. Cf. *Venegas v. Se. Airlines Co.*, 2007 WL 3196479, at *3 (C.D. Cal. Oct. 23, 2007) (denying summary judgment, "[n]otwithstanding [defendant's] compelling evidence supporting the absence of a material fact as to causation," where "[p]laintiffs [had] come forward with *some* evidence" and therefore "met their burden of demonstrating that a triable issue of fact exists as to causation") (emphasis added).

Here, the deposition of Plaintiff's expert Dr. Leslie Lockridge provides key evidence showing that a triable issue of fact exists as to causation. See, e.g., Plf.'s Additional Statements of Material Fact #71, #72, #81 (filed April 19, 2024) at 17–18 (referencing, generally, the potentially observable physical signs of Jared Shaffer's advancing cancer). Deposition statements by Heartbeet and NEKHS employees provide further disputed facts that bear on causation. See, e.g., Plf.'s Additional Statements of Material Fact #72–76 at 17–18 (referencing Heartbeet's and NEKHS's roles in communicating Jared Shaffer's health concerns—such as potentially observable signs of cancer—to his primary care provider).

Where Plaintiff's theory of liability relies on Defendants' failure to follow up or to develop an alternative treatment plan, this evidence is adequate to show a triable issue of fact. Cf. *Campbell v. United States*, 2013 WL 4875119, at *6 (D. Del. Sept. 12, 2013) (finding a "series of failures"—specifically, an "absence of…efforts" to follow up with recommended cancer screening—by decedent's medical providers was the proximate cause of decedent's death of colo-rectal cancer; where early intervention "would have discovered a lesion, that this lesion would have been small, and that its early removal would have altered [decedent's] course").

On a motion for summary judgment, the court gives the nonmoving party the benefit of reasonable doubts and inferences. *Brousseau*, 2007 VT 77, ¶ 5. Applying that standard, Plaintiff has demonstrated that there is a genuine dispute of material fact as to proximate cause. Therefore, summary judgment on this issue is not appropriate. Therefore, Defendant's motion for summary judgment on causation is denied.

### IV. Legal Analysis: Motion for Summary Judgment on Contract Claims

Courts are not required to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rodrigue v. Illuzzi*, 2022 VT 9, ¶ 33, 216 Vt. 308, reargument denied (Apr. 5, 2022) (quoting *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 10, 184 Vt. 1.

> Summary judgment is mandated…where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to [the party's] case and on which [the party] has the burden of proof at trial. Although the party opposing summary judgment is given the benefit of all reasonable doubts and inferences in determining whether there are disputed genuine issues of material fact, the moving party may not rely on bare allegations alone to meet the burden of demonstrating a disputed issue of fact.

*Burgess v. Lamoille Hous. P'ship*, 2016 VT 31, ¶ 17, 201 Vt. 450 (internal citations and quotations omitted).

Plaintiff alleges that NEKHS breached contracts governing Jared Shaffer's care. However—even after resolving all inferences in Plaintiff's favor—Plaintiff has not soundly demonstrated that the document referenced (the Individual Support Agreement, as to Defendant NEHKS) were contracts that could be breached.

Even assuming the Individual Support Agreement ("ISA") *was* a contract, Plaintiff's interpretation of the document relies on extrinsic evidence without the requisite showing that the

contract was ambiguous and therefore requires extrinsic evidence to interpret. See *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579 (1988). The court may consider the circumstances surrounding the agreement in determining whether ambiguity exists, i.e.: does the "writing in and of itself support[] a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." Id. "If, however, no ambiguity is found, then the language must be given effect in accordance with its plain, ordinary and popular sense." Id. An inquiry into the circumstances surrounding a contract may include evidence regarding the parties' preliminary negotiations, trade usages, and the course of dealing between the parties, but is not so broad as to include all parol evidence. See id. at 578.

Plaintiff does not argue that the plain language of the ISA supports a breach of contract claim. Plf.'s Opp. to Defs.' Joint Mot. for Summary Judgment on Contract Claims at 2. Although Plaintiff cites *Isbrantsen*, Plaintiff does not argue that the ISA is ambiguous (which could justify the introduction of the parol evidence Plaintiff describes, including evidence of "State and Local rules, regulations, and laws"). See id. Instead, Plaintiff argues the applicable contractual duties (and Defendants' breach thereof) can only be understood by expert testimony and fact-finding "alongside a common-sense interpretation of the contracts' plain language." See id. Because Plaintiff has not argued any reasonable interpretation of the ISA that would support breach, summary judgment is appropriate on this issue.

The nonspecific nature of Plaintiff's contract claims, instead, suggests that any agreement between the parties is better understood as one source of a Defendants' common law duty to Plaintiff. See *Bloomer v. Gibson*, 2006 VT 104, ¶ 24, 180 Vt. 397 (citing *Chavez v. Saums,* 1 Kan.App.2d 564, 571 P.2d 62, 65 (1977) (holding that "[w]hen an act complained of is a breach of specific terms of the contract, without any reference to the legal duties imposed by law upon the relationship created thereby, the action is in contract," but where "the gravamen of the action is a breach of the legal duty and not the contract itself, the action is in tort."). This is consistent with the Vermont Supreme Court's rulings that have kept the distinction between contract and tort distinct and separate. *Breslauer v. Fayston Sch. Dist.*, 163 Vt. 416, 421 (1995) (collecting cases illustrating the distinction and divide between contract and tort).

Plaintiff's argument for recovery in contract is predicated on the same harms for which Plaintiff seeks relief in tort. However, as between contract and tort law, "[i]n the adjudication of a lawsuit for relief from personal injury, the concepts of tort and negligence law provide the more

straightforward way to describe the respective duties and liabilities of the parties." *Favreau v. Miller*, 156 Vt. 222, 229 (1991). Similarly, the damages Plaintiff seeks are better understood as tort damages in that Plaintiff has not demonstrated that the ISA contemplated damages for pain, suffering, or wrongful death. See *Springfield Hydroelectric Co. v. Copp*, 172 Vt. 311, 314 (2001) (noting [t]he underlying premise of the economic loss rule is that negligence actions are best suited for "resolving claims involving unanticipated physical injury, particularly those arising out of an accident. Contract principles, on the other hand, are generally more appropriate for determining claims for consequential damage that the parties have, or could have, addressed in their agreement.") (quoting *Spring Motors Distribs. v. Ford Motor Co.*, 98 N.J. 555, 489 A.2d 660, 672 (1985)).

The remainder of Plaintiff's arguments either cite to cases that support Defendant NKHS' position[3] or come from out-of-state decisions that do not support or provide persuasive analysis for this Court to veer away from the established Vermont doctrines supporting the separation of tort and contract law under such circumstances.

Therefore, the Court grants summary judgment for Defendant NKHS on Plaintiff's breach of contract claim (count VIII).

## V. ORDER

For the foregoing reasons, Defendant's motion for summary judgment on causation is DENIED. Defendant's motion for summary judgment on breach of contract is GRANTED. Count VII against Defendant NKHS is DISMISSED.

Electronically signed on 5/15/2024 7:56 AM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge

_____

[3] For example, Plaintiff cites to *Smith* for the proposition that contract claims allow for pain and suffering. Neither *Smith* nor the case that it relies upon, *Waterbury Feed Co.*, stand for the proposition that contract law automatically supports a claim of pain and suffering or other tort-based damages. Instead, *Smith* and *Waterbury Feed Co.*, stand for the proposition that contract law permits both direct damages and special or consequential damages, but the later "must have been in the contemplation of the parties at the time they made the contract." *Waterbury Feed Co. v. O'Neil*, 2006 VT 126, ¶ 25; see also *Smith v. Country Village International, Inc.*, 2007 VT 132, ¶ 9. In both cases, the Court's analysis was limited and focused on certain damages resulting from the breach of the contract bargain, stock value in *Smith* and lost commercial revenue in *Waterbury Feed, Co.*, neither case imported or suggested that tort damages would be allowed.