*Tansey v. The Landmark Trust (USA)*, 77-4-13 Oecv (Harris, J., Aug. 7, 2018)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT
Orange Unit

CIVIL DIVISION
Docket No. 77-4-13 Oecv

DAVID C. TANSEY
    Plaintiff

    v.

THE LANDMARK TRUST (USA),
    Defendant

Decision on Defendant's Second Motion for Summary Judgement

Defendant The Landmark Trust (hereinafter "Defendant" or "the Trust") moves for summary judgment, arguing that Plaintiff David Tansey cannot establish the elements of his claim and that Plaintiff's workers' compensation settlement prevents him from bringing this action. The remaining claim in this case is for intentional infliction of emotional distress (IIED), based on Plaintiff's allegation that in 2012 members of the board of the Trust appeared at Plaintiff's house, ousted his wife in an "insidious attempt to eliminate a witness to their actions," and "berated" Plaintiff for two hours. See *Pl.'s Opposition to Def.'s Motion for Summary Judgment* at 2. Defendant is represented by Kaveh Shahi, Esq. Plaintiff is represented by Norman Watts, Esq.

Defendant contends that the worker's compensation exclusivity bar prevents a civil action for this IIED claim based on work-related allegations of emotional distress. Defendant argues Plaintiff's receipt of a final workers compensation settlement award, covering some of the same injuries as claimed in this lawsuit, served as an election of remedy, to the extent Plaintiff had a choice between a workers compensation benefit claim and his intentional tort suit.

Defendant also argues that Plaintiff has not established the extreme emotional distress or outrageous conduct necessary for an IIED claim.

Plaintiff asserts that the exclusivity bar does not apply here because the Workers Compensation Act (WCA) applies to personal injuries "at work" and "by accident." Plaintiff contends that the WCA, and the exclusivity bar, only covers negligent acts, not intentional ones. Plaintiff also contends that the law of the case doctrine precludes Defendant from raising the sufficiency of the evidence argument for a second time, and in any event his facts show the basis for the jury to hear his IIED claim. Finally, Plaintiff argues that he did not elect the WCA remedies in preclusion of a civil claim, arguing that the workers' compensation settlement was for negligence, whereas the civil suit is for intentional conduct.

<u>Background</u>

Plaintiff's complaint alleges that in the summer and fall of 2012 he suffered emotional distress at work. Def.'s SUF ¶ 1. The Trust's "weak financial condition" and "harassment" by board members caused Plaintiff's anxiety and emotional distress. *Id.* ¶ 2. Additionally, two board members "forced Plaintiff into a non-noticed meeting in the kitchen of his residence." *Id.* ¶ 3. This is the so-called "kitchen meeting." He was "harassed and abused" during this meeting. *Id.* ¶ 4. The board members came to Plaintiff's house to discuss claims regarding Plaintiff's workplace behavior. *Id.* ¶ 8. According to Plaintiff, this meeting was "one bit of abuse." *Id.*

As claimed by Plaintiff, the board members "showed up in my kitchen, kicked my wife out of the house," and "said very serious charges have been leveled against me." *Id.* The overall story of events from this period was "extremely upsetting" to Plaintiff. *Id.* ¶ 11. Plaintiff asserts that the board members "aggressively harassed and abused" him, accusing him of policy infractions and creating a "hostile and intimidating workplace." Pl.'s SDF ¶ 24. Plaintiff alleges

he was not provided specific details of the charges levied against him. *Id.* He was repeatedly "cut off," even as he tried to explain one of the accusatory employees had violated his job description and company policies. Plaintiff was told he had no right to discipline the employee and told he had no right to defend himself. *Id.* ¶¶ 25–27. The meeting and the board members' behavior was "hostile." *Id.* ¶¶ 32–33.

Plaintiff submitted a claim with the Trust's workers' compensation insurer for "[i]ntense stress" caused by work finances and an "abusive board of directors." Plaintiff stated that the time of emotional distress spanned from July 1, 2012 to November 20, 2012. Def.'s SUF ¶ 7. According to Plaintiff, the intense stress "developed over time," and that there was "no particular day" and "no particular week" when "all of these things happened." *Id.* Plaintiff settled his workers' compensation claim for injuries including "blood pressure, teeth, jaw, psychological component including stress, anxiety, depression and all natural sequelae." *Id.* ¶ 13.

Discussion

Summary judgment is appropriate if the moving party establishes there is no genuine dispute of material fact and the party is entitled to judgment as a matter of law. V.R.C.P. 56(a). The Court considers the evidence in a light most favorable to the nonmoving party. *Stone v. Town of Irasburg*, 2014 VT 43, ¶ 25, 196 Vt. 356.

A trial court may consider a second motion for summary judgment even if a prior judge denied a similar summary judgment motion in order to avoid a "useless" trial. See *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) ("We overrule *Economou*'s holding that a second judge may not grant a motion for summary judgment or judgment on the pleadings after denial of a similar motion by another judge. In cases like this, rigid application of the *Economou* [*v. Economou*,

3

133 Vt. 418 (1975)] rule would defeat the purpose of summary judgment and mire our trial courts in 'useless' trials").

Plaintiff cites *Morrisseau* to support the proposition that the law of the case doctrine should preclude the Court from reconsidering the prior summary judgment decision. However, *Morrisseau* rejected the argument that the law of the case doctrine prevents reconsideration of a prior decision, explaining that the doctrine is a "rule of practice" from which the court may depart, and the Court retains the power to reopen what had been previously decided. *Id.* at 364. The Supreme Court explained that it will not apply a "useful rule of practice in a way that prevents efficient adjudication." *Id.* This *Morrisseau* holding has been recently restated with approval by the Vermont Supreme Court in *Burgess v. Lamoille Housing Partnership*, 016 VT 31, ¶ 19, 201 Vt. 450, where citing *Morriseau*, the Court stated:

> Indeed, even if the previous judge had denied an earlier motion for summary judgment based on the same information, we have explicitly held that a second judge may grant a motion for summary judgment or judgment on the pleadings after denial of a similar motion by another judge.

This issue was discussed in the pre-trial conference, including the fact that the undersigned judge, who will conduct the three-day jury trial, will need to rule on a Rule 50(a) defense motion for judgment as a matter of law at the close of Plaintiff's case. Such motion will test the sufficiency of Plaintiff's evidence to prove an IIED claim, and legal issues as to the workers compensation exclusivity bar and election of remedy defenses asserted in the second motion. It will make for efficient proceedings for the court to test the sufficiency of the evidence, and the viability of the legal defenses, before commencing the three-day trial.

Accordingly, the Court considers the merits of Defendant's motion here.

4

## I.  Exclusivity Bar

Defendant argues that Plaintiff's IIED claim falls within the WCA's exclusivity provision.  In general, workers' compensation is the exclusive remedy for work-related injuries. 21 V.S.A. § 622. "Under the law, employees gain an expeditious remedy without the burden of proving fault; in exchange, employers' liability is limited." *Dunham v. Chase*, 165 Vt. 543, 543 (1996) (citing *Kittell v. Vermont Weatherboard, Inc.,* 138 Vt. 439, 441 (1980)).  The Court has broadly construed the requirement that the injury occur "by accident." *Gallipo v. City of Rutland*, 173 Vt. 223, 236 (2001) (citing 21 V.S.A. § 618).  Thus, "[i]ntentional acts are excluded from this requirement only if there is 'a specific intent to injure.'"  *Id.* at 236–37 (quoting *Kittell v. Vermont Weatherboard, Inc.,* 138 Vt. 439, 441 (1980)).

In *Mead v. W. Slate, Inc.*, the Court explained:

> Like most other jurisdictions, we have recognized an exception to the exclusivity rule for intentional injuries committed by the employer. We stressed in *Kittell,* however, that the policy trade-off underlying the workers' compensation law was best served by allowing the remedial system which the Legislature has created a broad sphere of operation.  Hence, we held that nothing short of a specific intent to injure falls outside the scope of the Act.  Under *Kittell,* even wilful and wanton conduct leading to a sudden but foreseeable injury is within the scope of the Act.

2004 VT 11, ¶ 12, 176 Vt. 274 (quotations and citations omitted). For example, the Court said in *Gallipo*: "We think it clear that an employer can take actions against an employee, producing mental injury and motivated in part by unlawful discrimination, without having the specific intent to injure the employee."  *Id.* at 237.

In *Stamp Tech, Inc. ex rel. Blair v. Ludall/Thermal Acoustical, Inc.*, however, the Court reversed a grant of summary judgment to an employer on the issue of whether the plaintiff met

5

either the specific intent standard or the substantial certainty standard.[1]  The Court held that the plaintiff was not given the benefit of all reasonable doubt on the intent issue, despite the trial court's conclusion that no facts established that the employer took actions with the specific intent of harming its employees.  2009 VT 91, ¶ 30, 186 Vt. 369.  The Court reasoned that "[t]he facts alleged by plaintiff susceptible to competing inferences," holding: "Intent must often be inferred from a party's acts, and where intent is a dispositive issue, courts should exercise caution in granting summary judgment." *Id.* ¶ 31.

In a strong dissent, Justice Burgess said that the majority's opinion effectively overruled *Kittell* and held that prima facie intent to injure is made out, "not by evidence of specific intent to injure," but by evidence that an employer knows that a workplace condition is dangerous.  *Id.* ¶ 32 (Burgess, J., dissenting).  The dissent asserts that despite the majority's ruling, "[p]laintiff carried the burden of proof on this issue, but failed to proffer any evidence to show that defendant specifically intended to injure him—the only exception to the Act's exclusive remedy provision—as was required to survive defendant's motion for summary judgment."  *Id.* ¶ 34.

This Court is bound by the majority opinion in *Stamp Tech*, and must exercise caution in granting summary judgment on the issue of intent (or substantial certainty).  In this case, Plaintiff alleges that defendant's actions, through its board members, "were deliberately directed at plaintiff to inflict emotional distress upon him."  See *Pl.'s Opp. Summ. J.* at 2.  Like *Stamp Tech*, the Court cannot grant summary judgment on the basis of the exclusivity bar when the facts alleged by plaintiff are susceptible to competing inferences.

Two federal cases support this caution.  The Second Circuit has held that a party may

---

[1] The Court noted that it considered but did not adopt the lower "substantial certainty" standard in *Mead v. Western Slate, Inc.,* 2004 VT 11, ¶ 17.  See *Stamp Tech, Inc. ex rel. Blair*, 2009 VT 91, ¶ 27.

"skirt" the exclusivity bar as long as his or her complaint *alleges* a specific intent to injure. *Wade v. Johnson Controls, Inc.*, 693 F.2d 19, 22 (2d Cir. 1982) ("The complaint meets the requirements of Fed.R.Civ.P. 8(a) and expressly alleges the employer's 'specific intent' to injure, thereby skirting the exclusivity provisions in the Vermont Workmen's Compensation Act."). And more broadly, a federal district court judge concluded that the "Vermont Worker's Compensation Act does not bar claims of intentional infliction of emotional distress as a matter of law . . . ." *Goodstein v. Bombardier Capital, Inc.*, 889 F. Supp. 760, 767 (D. Vt. 1995). In light of the cases discussed above, the Court finds that Plaintiff's allegations of specific intent are sufficient to survive the workers' compensation exclusivity bar at the summary judgment stage.

## II. Election of Remedies

The next issue is whether Plaintiff has elected the remedy of a workers' compensation settlement at the exclusion of this IIED claim. As an initial matter, election of remedies is generally considered an affirmative defense that is waived if not pled. See *Gilbert v. Town of Brookfield*, 134 Vt. 251, 254 (1976); *Gardner v. Gauthier*, 101 Vt. 147 (1928). The Trust did not raise the defense in its original answer, but post-filing discovery showed that Plaintiff accepted final workers' compensation benefits at a later date. Even if the Court permits the Trust to raise the issue of election of remedies at this stage of the case, it concludes that doctrine of election of remedies does not bar the IIED claim.

The Supreme Court briefly addressed election of remedies as it applies to the receipt of workers' compensation benefits in *Gallipo v. City of Rutland*, 173 Vt. 223 (2001). The Court did not directly rule on the applicability of the doctrine when a plaintiff has received a final settlement of workers' compensation benefits. See *id.* at 228. Rather, the Court merely concluded that it did not prevent a civil case when the eligibility for benefits and final disposition

7

remained outstanding. The Court concluded that the doctrine of election of remedies "does not preclude filing both a workers' compensation claim and a civil action, subject to an eventual determination of which remedy is appropriate if they prove to be inconsistent." *Id.* at 229.

Here, the Trust argues that "[h]ad the Court wished to reject the doctrine of election of remedies completely, it could have done so," but the Court "in effect endorsed the applicable of the doctrine here." Def.'s Reply at 7. In the Court's view, *Gallipo*'s holding does not extend this far; rather, it merely held that the doctrine does not preclude the filing of both a workers' compensation claim and a civil tort action. It does not apply the doctrine to prevent an IIED claim from proceeding despite a final workers' compensation settlement. The Vermont Supreme Court has not otherwise ruled on the issue.

In *Helf v. Chevron U.S.A. Inc.*, the Supreme Court of Utah considered whether the doctrine precluded an intentional tort suit when the plaintiff had settled a final workers' compensation claim. 2015 UT 81, 361 P.3d 63. It surveyed the holdings in other states, finding that they are split on the issue, but sided with those jurisdictions that do not strictly apply the doctrine in the context of binding workers' compensation payments. The court reasoned:

> Because these remedies must be adjudicated in separate forums, a strict application of the election of remedies doctrine presents injured workers with a cruel dilemma. If a worker choses to apply for and receives workers' compensation benefits, the worker may be deemed to have made a binding election of this remedy because the worker pursued it to a "determinative conclusion." By accepting workers' compensation benefits for urgent financial needs . . . a worker who may have been injured by an intentional tort would be barred from asserting a tort claim. If the worker instead elects to forego workers compensation benefits and gambles on an intentional tort claim, the worker would have to survive without any benefits . . . until the completion of the trial and inevitable appeal or appeals.

*Id.* ¶ 80 (citation omitted). Noting in part the doctrine is equitable in nature, the Supreme Court of Utah concluded that its strict application would be inappropriate given the above

8

considerations, 2015 UT 81, ¶ 85.  The court approvingly quoted the Supreme Court of

Connecticut, which similarly held:

> Workmen's compensation is above all a security system; a strict election doctrine transforms it into a grandiose sort of double-or-nothing gamble. Such gambles are appealing to those who still think of the judicial process as a glorious game in which formal moves and choices are made at peril, and in which the ultimate result is spectacular victory for one side and utter defeat for the other. The stricken workman is in no mood for this kind of play, and should not be maneuvered into the necessity for gambling with his rights, under the guise of enforcing a supposed penalty against the employer.

*Id.* ¶ 84 (quoting *Suarez v. Dickmont Plastics Corp.*, 639 A.2d 507, 515 (Conn. 1994)).

This Court agrees with the foregoing analysis and adopts it here.   Mr. Tansey

can only recover on his IIED tort claim if he establishes the employer's specific-intent-

to-inure and/or the *Mead v. Western State* "substantial certainty" exclusions that remove

his tort claim from the exclusivity clause of the Workers Comp statute. The election of

remedies doctrine is an equitable doctrine requiring its application to achieve just results.

See  *Gardner v. Gauthier*, 101 Vt. 147 (1928); 25 Am. Jur.2d *Election of Remedies*,

Section 3 (2018); 28A C.J.S. *Election of Remedies,* Section 1 (2008).  The author of a

leading workers compensation treatise also expressed his dismay at applying workers

compensation election of remedy principles in the intentional tort context so that the

"tricky and technical doctrine of election" defeats the spirit and purpose of compensation

legislation.   To apply the election of remedy prohibition,  "with its entire philosophy

smacking of medieval legalism,"  . . . "confronts the needy and often uneducated

claimant not with the certainty of protection which compensation law exists to provide,

but with a gambler's all-or-nothing choice". 10 Arthur Larson & Lex Larson, *Larson's*

*Workers Compensation Law*, Section 115,05 92914) (cited in *Help, supra* 2015 UT 15 at

¶ 85

9

As the *Helf* Court stated, election of remedies "should not be applied to force the worker to make a binding election before knowing how a jury will resolve an intentional tort claim." *Helf*, 2015 UT 81, ¶ 85.

The court concludes election of remedies doctrine does not bar Plaintiff's IIED claim against the Trust despite Mr Tansey's receipt of final workers compensation benefits. As the *Helf* Court and other courts reasoned, if Mr. Tansey obtains any recovery on his IIED claim, to prevent a double recovery, the Trust's workers compensation carrier may seek subrogation for any claims it paid on the workers compensation claim covering the same claimed injuries. *Helf*, 2015 UT 81, ¶ 86.

### III. Sufficiency of the Evidence

The Trust's motion for summary judgment is not centered on disproof of Plaintiff's IIED clam, but rather the contention that Plaintiff cannot prove one or more of the essential elements to present an IIED claim in the first place. This use of the summary judgment tool has long been recognized in a case such as this, where "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to his case and on which he has the burden of proof at trial." *Poplanski v. Lamphere*, 152 Vt. 251, 254 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986)); *Estate of Alden v. Dee*, 2011 VT 64, ¶ 35, 190 Vt. 401, 417; *Baptie v. Bruno*, 2013 VT 117, ¶ 10, 195 Vt. 308, 313; *Burgess v. Lamoille Housing Partnership*, 2016 VT 39, ¶ 17, 201 Vt. 450, 459. This matter has been pending and there has been ample time to complete discovery to elicit all evidence in favor of Plaintiff's IIED claim.

Defendant contends that the "kitchen meeting" did not rise to the level of outrageous conduct required for IIED, and there is insufficient evidence that Plaintiff suffered extreme emotional distress. To sustain a claim for IIED, a plaintiff "must show defendants engaged in outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395 (citations and quotations omitted). Plaintiff's burden is a "heavy one," as he must show defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Id.* The Court makes the initial determination of whether a jury could reasonably find that the alleged conduct satisfies all the elements of an IIED claim. *Id.*

Defendant's motives alone cannot establish a claim for IIED. *Id.* ¶ 15. Nor does the employee's personal beliefs as to what motivated the employer's actions establish the basis for a claim. *Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265. Rather, the test is objective: Plaintiff must demonstrate that harm so severe that no reasonable person could be expected to endure it. *Fromsom supra.* (citing *Baldwin v. Upper Valley Servs., Inc.*, 162 Vt. 51, 57 (1994)). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are insufficient. *Denton v. Chittenden Bank*, 163 Vt. 62, 66 (1994). In *Crump v. P & C Food Markets, Inc.*, there was sufficient evidence for an IIED claim when plaintiff's evidence showed that "defendant's representative summoned plaintiff to a lengthy meeting without notice, continued the meeting without a break for rest or food, repeatedly badgered him to amend and sign a statement, and that plaintiff did not feel free to leave the meeting. Immediately after the

11

meeting, defendant's representative directed plaintiff to clean out his desk, a summary dismissal after eighteen years of service."  154 Vt. 284, 296 (1990).

The Court later put *Crump* in context:

> Crump, an eighteen-year employee, was summarily dismissed after being falsely accused of theft, kept in a three-hour meeting with no opportunity to leave or have lunch, and badgered to sign a confession. In addition, the company defamed Crump by publishing reports that he was a problem employee because he was a thief. *Crump* stands for the proposition that the extreme and outrageous character of conduct may arise from the abuse of authority; it does not mean that supervisors may be held liable for "mere insults, indignities, or annoyances that are not extreme or outrageous."

*Denton v. Chittenden Bank*, 163 Vt. 62, 67 (1994).  The summary judgment record in this case is distinguishable from *Crump* in several respects.

First, Plaintiff has not alleged that he had no opportunity to end the meeting; he does not allege that he was forced to continue the meeting or that he asked the board members to leave and they refused. It is noteworthy that the culminating encounter upon which Plaintiff relies upon occurred in his home – where Plaintiff  clearly had the right to terminate the meeting at any time and instruct the board members to leave.

Second, Plaintiff was not pressured into signing a confession or anything of similar import.

Third, Plaintiff has not alleged that the allegations by the other employees were false, or that the board members knew those allegations to be false. To the extent Plaintiff was being confronted with negative statements made about him by persons working under him, the board members at the meeting had legitimate reasons to make such inquiries. An employer's investigation of alleged employee misconduct does not support an IIED charge. See *Fromsom, supra*;  *Dalude v. FAHC*, 174 Vt. 74, 83 (2002)  (employer reasonable investigation of a patient

12

complaint by questioning employee nurse was reasonable and not outrageous, regardless of the veracity of the complaint).

Fourth, Plaintiff does not allege that the board members attempted to defame him through their actions. This is not a case where the employee was defamed or publicly and harshly ridiculed in front of a large group of colleagues. See *Ploof v. Brooks Drugs, Inc.*, 1991 WL 497170, at *6 (D. Vt.) (Coffrin, J.) (applying VT law) (firing during which plaintiff's former supervisor allegedly extremely verbally abusive and raised his arm as if to threaten the employee found to not support an IIED claim, noting "a discharge from employment, even when accompanied by defamatory or offensive remarks by the plaintiff's supervisor, simply does not reach the threshold level of conduct necessary to support a claim of outrageous conduct").

And fifth, Plaintiff was not "summarily fired" at the conclusion of the meeting. Rather, he was not fired until November 20, 2012, almost three months later. See Def.'s SUF ¶ 9. The summary dismissal in *Crump* was an important consideration in the Court's analysis that is not present here. *Crump* held that "if the manner of termination evinces circumstances of oppressive conduct and abuse of a position of authority vis-a-vis plaintiff, it may provide grounds for the tort action." Here, Plaintiff's termination three months after the kitchen meeting is not part of conduct in the August 2012 IIED claim.

The Court recognizes that the incident in this case occurred where Plaintiff was living at the time, rendering the meeting more intrusive than one at an office. Countering this is the fact Plaintiff surely had the right to declare the meeting over and require the board members to vacate his private home. On balance, Plaintiff's allegations are substantially distinguishable from *Crump*.

More troublesome than these differences are the lack of specific factual allegations regarding the board member's actual conduct and words at the meeting. Plaintiff broadly alleges that the members "aggressively harassed and abused" him. It is unclear from Plaintiff's disputed statement of facts what precise conduct constituted "harassment" and "abuse." On one hand, the harassment and abuse could have been mere insults, indignities, and threats that Plaintiff subjectively found to be offensive. On the other hand, the harassment and abuse could have involved shouting, physical altercations, threats of bodily injury, or the like. The Plaintiff's statement of disputed facts does not answer this issue. At most the description of the meeting was one that was one-sided, accusatory, rude and gave Plaintiff no meaningful opportunity to get details about conclusory accusations or defend himself. The meeting details, to the extent provided, reveal an encounter involving "insults, indignities and threat" and even rude and boorish behavior, which have been insufficient to show "outrageous" behavior.

It has oft been said that the non-moving party cannot rebut or survive a properly supported motion for summary judgment by conclusory allegations without specific facts to support them. *Morisseau v. Hannaford Bros.*, 2016 VT, 17, ¶ 9, 201 Vt. 313, 320; *Hemond v. Frontier Communications of America, Inc.*, 2015 VT 267 , ¶ 9, 119 Vt. 272; *Robertson v. Mylan Laboratories, Inc.*, 2004 VT 75, ¶ 41, 176 Vt. 356; *Starr Farm Beach Campowners Ass'n v. Boylan,* 174 Vt. 503, 506 (2002) (mem.) (holding parties' affidavit containing "wholly conclusory" assertion that they relied on certain representations failed to raise triable issue on collateral estoppel claim "as it supplied no factual basis for the court to evaluate their claim of detrimental reliance"); *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25,  28 (1999) (conclusory allegations without facts to support them are insufficient to survive summary judgment). As the Court explained in *Mello v. Cohen*, 166 Vt. 639, 641 (1998):

At the motion to dismiss stage, a plaintiff must merely show a set of circumstances or facts exist that, if proven, would entitle him to relief on the claim alleged in the complaint. See *Association of Haystack Property Owners, Inc. v. Sprague,* 145 Vt. 443, 446, 494 A.2d 122, 124 (1985). By contrast, to defend against a summary judgment motion, a plaintiff cannot rely on conclusory allegations or mere conjecture. Even though a plaintiff's allegations present a cognizable claim sufficient to withstand a motion to dismiss, the same allegations may well prove insufficient to withstand a motion for summary judgment. See 5A C. Wright & A. Miller, Federal Practice and Procedure § 1356, at 298 (2d ed.1990) (distinguishing test of formal sufficiency of complaint on motion to dismiss from summary judgment, which tests merits of claim).

The nonmoving party may survive a summary judgment motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case. *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995). If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law. *Id*. "Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . . . The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact." *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 5, 175 Vt. 413.

An opponent to summary judgment may not simply rest on allegations in the pleadings to defeat the motion. *Murray v. White*, 155 Vt. 621, 628 (1991). "The allegations must have sufficient support in specific facts to create a *genuine* issue of material fact." *Id*. (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986)). There is no issue for trial unless there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"; merely colorable evidence, or evidence that is not significantly probative, is insufficient. *Anderson,* 477 U.S. at 249–50.

Here, Plaintiff's conclusory allegation of "aggressive harassment and abuse" and a "hostile and threatening workplace" are not supported by sufficient specific facts to establish the

15

standard of outrageous conduct in *Crump*.  Additionally, Plaintiff has not alleged or shown

specific facts demonstrating extreme emotional distress that was caused by outrageous conduct.[2]

The distress inflicted must be:

> so severe that no reasonable man could be expected to endure it. The intensity and
> the duration of the distress are factors to be considered in determining its severity.

---

[2]  As stated in Restatement (Second) of Torts, § 46, comment j:

> Emotional distress passes under various names, such as mental suffering, mental
> anguish, mental or nervous shock, or the like. It includes all highly unpleasant
> mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment,
> anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme
> that the liability arises. Complete emotional tranquility is seldom attainable in this
> world, and some degree of transient and trivial emotional distress is a part of the
> price of living among people. The law intervenes only where the distress inflicted
> is so severe that no reasonable man could be expected to endure it. The intensity
> and the duration of the distress are factors to be considered in determining its
> severity. Severe distress must be proved; but in many cases the extreme and
> outrageous character of the defendant's conduct is in itself important evidence that
> the distress has existed.

Plaintiff failed to specify his claimed emotional distress in his statement of material facts,.
However his unsworn attachments include a report of his psychologist stating Plaintiff was first
seen in a state of high anxiety (and reported chest pains, loss of appetite, and sleep and
concentration issues), and that the acute anxiety symptoms reduced after four weekly sessions
(See Plaintiff's Exhibit 1, at WLF P40).   It may be a close question whether Plaintiff's relatively
short period of acute anxiety served as "severe" emotional distress for IIED purposes. See e,g.,
*Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 633 A.2d 985 (App.
Div. 1993) (where the intentional conduct is directed at the plaintiff, he or she need not prove
any physical injury, but allegations relating to aggravation, embarrassment, minor headaches,
and loss of sleep are not enough to withstand a motion for summary judgment);  *Saeed v.
Warner-Lambert Co.*, 61 Fed. Appx. 740 (2d Cir. 2003) (applying New Jersey law) ( hair loss
and difficulty sleeping for "a number of months," where plaintiff conceded that he was able to
engage in normal daily activities and did not take any medication, undergo any tests, or seek
treatment of any kind beyond consulting his physician wife, was insufficient to establish
intentional infliction of emotional distress, and here, the plaintiff former employee offered no
proof of psychological trauma or any lasting problems); *Kennedy v. UMC University Medical
Center,* 203 F. Supp. 3d 1100 (D. Nev. 2016) (applying Nevada law) ( alleged symptoms of
anxiety and panic attacks arising from her termination were insufficient to establish severe
emotional distress, as would support an IIED claim). The court does not determine this issue as it
concludes Plaintiff has not show "outrageous" conduct, or that his claimed emotional distress
was causally linked to conduct that can be characterized as "outrageous" for the IIED tort
purposes.

16

Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed.

Restatement (Second) of Torts § 46 (1965).

Here, Plaintiff himself could not say when his stress relating to work became "intense," because "[c]ertain things developed over time." Def.'s SUF ¶ 7. There was "no particular day" that it started. *Id.* In Plaintiff's characterization, the "kitchen meeting" constituted "one bit of abuse." *Id.* ¶ 8. The mental-emotional conditions Plaintiff experienced, even if assumed to be sufficiently severe for the tort of IIED, do not appear causally linked to "extreme and outrageous" behavior. It evolved from a long set of work events spanning Summer – Fall 2012. However, "[a] string of individually unactionable events cannot be taken together to establish a prima facie case of IIED." *Fernot v. Crafts Inn*, 895 F.Supp. 668, 684 (D. Vt. 1995). As the *Denton* Court said "[a]bsent at least one incident of behavior that transcends the ignoble and vast realm of unpleasant and often stressful conduct . . . , incidents that are themselves insignificant should not be consolidated to arrive at the conclusion that the overall conduct was outrageous." *Denton v. Chittenden Bank,* 163 Vt. 62, 65 (1994). As noted above, the "kitchen table" incident lacks sufficient hallmarks to be objectively viewed as meeting the "outrageous" element for the IIED tort.

Plaintiff in effect relies upon a multi-month ***accumulation of events*** to meet his duty to show outrage. As Judge Thomas Zonay has stated, "[o]ur Supreme Court, in keeping with analogous precedent from other jurisdictions, steadfastly has refused to allow what might be called cumulative outrage - that is, outrage constructed from a series of less-than-outrageous acts." *Sears v. St. Johnsbury Academy*, 2007 WL 6096859, Docket 19-1-06 Cacv (Vt. Sup. Ct., Nov. 9, 2007) (Zonay, J) (citing *Denton, supra; Fromson*, *supra*; *Dulude v. Fletcher Allen*

17

*Health Care, Inc.*, 174 Vt. 74, 84 (2002)); see also *Murray v. St. Michael's College*, 164 Vt. 205, 212 (1995) (no prima facie IIED claim where plaintiff claimed defendants retaliated against him for filing a workers' compensation claim by "badgering him to come back to work [although he was injured], changing his employment duties and responsibilities, requiring him to work night shifts in breach of a previous agreement, changing his work hours, giving him unfairly low job evaluations, and challenging his right to receive workers' compensation benefits," and finally demoting him for misconduct); *Mancini v. General Electric Co.*, 820 F.Supp. 141 (D. Vt. 1993) (applying Vermont law) (terminated employee with 24 years' of service failed to establish outrageous acts to prove a cause of action for IIED against his former employer where the employee's supervisor, directed verbal abuse at him and had at times ignored the employee, while at other times paying unusually close attention to his work habits in "nit picking detail," even if the supervisor knew that the former employee suffered from emotional problems that made him somewhat more susceptible to the adverse effects of such conduct). See *also Cheney v. New England Newspaper, Inc.*, 2014 WL 2558330, Docket 509-10-12Wmcv (2/26/14) (Wesley, J)(summary judgment for employer on IIED claim where employer demoted employee during a medical leave, rudely screamed at her and mocked her when she asserted her legal rights, refused to discuss it and told her to "go to work" in her reassigned position or go home; dismissal granted for lack of showing of extreme outrage despite fact employer "was thoughtless, rude and show[ed] a fundamental misunderstanding of an employee's right to medical leave").

Courts in other states have rejected IIED claims arising out of contentious, rude and inconsiderate employment situations. See e.g., *Sterling v. Upjohn Healthcare Services, Inc.*, 299 Ark. 278, 279 (1989) (employer's attempts to undermine the employee, who was employed as an

18

administrator, by falsely telling other employees that the administrator was always drunk, falsely accusing the administrator of making untrue statements, delaying the processing of the administrator's expense vouchers and of vouchers belonging to other employees who would blame the administrator for the delay, asking employees under the administrator's supervision to watch him and report on him, instructing the administrator not to communicate with other employees, and cursing the administrator, were not sufficiently extreme or outrageous so as to allow for recovery); *Clayton v. Nabisco Brands, Inc.,* 804 F. Supp. 882, 884–86 (S.D. Tex. 1992) (applying Texas law) (former employee failed to demonstrate an issue of material fact on a claim for intentional infliction of emotional distress, the court held, where evidence that during a five-year period managers were prone to yelling, rude, accusatory, suspicious, inconsiderate, insulting, and unduly critical did not show conduct so vile or reprehensible as to go beyond all possible bounds of decency, to be regarded as atrocious, and utterly intolerable in a civilized community); *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 828 P.2d 479, 481 (Or. Ct. App. 1992) (employer's conduct in the course of terminating the plaintiffs' employment, in directing them to hold hands with coworkers, demanding that they surrender their keys, pacing tensely in front of them with clenched hands, accusing them of being liars and saboteurs, terminating their employment, refusing to explain this conduct, and rashly ordering them off the premises, did not exceed the bounds of social toleration so as to state a claim for intentional infliction of emotional distress, as conduct that is merely rude, boorish, tyrannical, churlish, and mean does not satisfy that standard); *Kentucky Fried Chicken Nat. Management Co. v. Weathersby*, 607 A.2d 8, 16 (Md. 1992) (employer's actions did not reach a level of outrageousness required to recover under an intentional infliction of emotional distress theory, where the employee's supervisor accused the employee of stealing money from the store safe, ordered her to take a polygraph test, and, in

19

front of customers and other employees, took away the employee's store keys and suspended her for 10 days "pending an investigation" into the incident, even though, unknown to the employer, the employee had special personality traits that, combined with the supervisor's actions, resulted in the employee's hospitalization for depression and severe suicidal and homicidal tendencies); *Knudsen v. Quebecor Printing (U.S.A.) Inc.*, 792 F. Supp. 234, 241 (S.D. N.Y. 1992) (applying New York law) (allegations that the plaintiff's employer intentionally, willfully, and maliciously misrepresented facts and circumstances of the plaintiff's job performance and used these misrepresentations as the basis for his termination, together with allegations that these misrepresentations shocked, embarrassed, and humiliated the plaintiff and that, as a result thereof, he suffered "nervous and erratic behavior, weight loss, lack of sleep, puffiness and swelling," did not amount to outrageous conduct and failed to state a cause of action for intentional infliction of emotional distress); *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1387 (Ariz. Ct. App. 1994) (former chief Financial Officer's IIED claim rejected where the CFO alleged that he was called to the office at 2:00 a.m., and that armed personnel brought him to the lobby, where he was then fired in front of news media that had been invited to watch); *Petkewicz v. Dutchess County Dept. of Community & Family Services*, 27 N.Y.S.3d 264 (N.Y. App. Div. 2016) (public employer's conduct was not so extreme or outrageous, as required to satisfy first element of intentional infliction of emotional distress, where employee's supervisor was overtly hostile, failed to provide her with meaningful mentoring and constructive feedback, and improperly prejudged employee's ability to perform her working duties, leading to employee's discharge.)

In sum, from Plaintiff's proof and statements, the Court cannot conclude that Plaintiff has met his burden that he was subjected to "extreme and outrageous conduct" or that he suffered

distress so severe that no reasonable person could be expected to endure it, actually or proximately caused by the "kitchen meeting." See *Fromson*, 2004 VT 29, ¶ 14.

<u>Conclusion and Order</u>

In light of the foregoing, Defendant's Second Motion for Summary Judgment is **granted.** The currently scheduled three day jury trial is CANCELED. The currently pending motion in limine is MOOT.

Defendant may prepare and file, pursuant to V.R.C.P. 58(d) a proposed final Judgment Order in this case, and pursuant to that Rule Plaintiff will have 7 days to file any objection to the proposed judgment. The proposed Judgment Order will make it clear that final entry of judgment is being entered on all claims asserted in the matter, including those previously dismissed under the November 6, 2015 order of Judge Pratt, as no prior Rule 54(b) determinations were made or entered on the claims previously dismissed.

Dated at Chelsea, Vermont on August 7, 2018.

_____
 Hon. Michael J. Harris
Superior Court Judge

21