NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 12

No. 22-AP-119

| | |
|---|---|
| Sarah Spinette | Supreme Court |
| | |
| v. | On Appeal from<br>Superior Court, Chittenden Unit,<br>Civil Division |
| | |
| University of Vermont, Catamount/Redstone<br>Apartments LLC, and Catamount Commercial<br>Services, Inc. | November Term, 2022 |

Samuel Hoar, Jr., J.

Rachel A. Batterson and Erika Johnson, Vermont Legal Aid, Inc., Burlington, and
  Stephen M. Dane of Dane Law LLC, Perrysburg, Ohio, for Plaintiff-Appellant.

Kendall Hoechst and Haley Peterson of Dinse P.C., Burlington, for Defendant-Appellee
  University of Vermont and State Agricultural College.

Alexander J. LaRosa of MSK Attorneys, Burlington, for Defendants-Appellees
  Catamount/Redstone Apartments, LLC and Catamount Commercial Services, Inc.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1.      **REIBER, C.J.**      Plaintiff appeals from a summary-judgment decision in defendants' favor on her housing-discrimination claim. She argues that summary judgment was prematurely granted and that the undisputed facts do not support a judgment in defendants' favor. We affirm.

## I. Proceedings Below

¶ 2.     The record indicates the following.  Plaintiff sought summer housing for herself and her minor child at the Redstone Apartments located on the campus of the University of Vermont and State Agricultural College (UVM).  The Redstone Apartments are owned by Catamount/Redstone Apartments, LLC (Redstone), which leases the land from UVM.  Catamount Commercial Services, Inc. (Catamount) manages the apartments.

¶ 3.     In March 2018, Catamount denied plaintiff's application to sublet a two-bedroom apartment for herself and her daughter.  Two years later, plaintiff filed a complaint against UVM, Redstone, and Catamount.  She alleged in relevant part that defendants violated the federal Fair Housing Act (FHA), 42 U.S.C. § 3604(a), and the Vermont Public Accommodations Act (VPAA), 9 V.S.A. §§ 4500-4507, "by refusing to allow her to sublet an apartment because she intended to live in the apartment with her minor child."  9 V.S.A. § 4503(a)(1)

¶ 4.     The FHA makes it unlawful "[t]o refuse to . . . rent after the making of a bona fide offer, or to refuse to negotiate for the . . . rental of, or otherwise make available or deny, a dwelling to any person because of . . . familial status."  42 U.S.C. § 3604(a); see also id. § 3602(k)(1) (defining "familial status" in relevant part as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . a parent or another person having legal custody of such individual"); United States v. Lepore, 816 F. Supp. 1011, 1017 (M.D. Pa. 1991) (explaining that Congress included "familial status" in FHA "to alleviate the squeeze on affordable housing stock for families with children and to protect such families from eviction or inability to find reasonably priced places to live").  The VPAA, which is patterned on the FHA, makes it unlawful to "[t]o refuse to . . . rent, or refuse to negotiate for the . . . rental of, or otherwise make unavailable or deny, a dwelling or other real estate to any person . . . because a person intends to occupy a dwelling with one or more minor children."  9 V.S.A. § 4503(a)(1).

2

¶ 5.    In March 2021, following discovery, defendants moved for summary judgment and provided a statement of undisputed material facts with citations to the record.  Defendants explained that the Redstone Apartments were for students only and plaintiff's housing application was denied because she intended to live with a nonstudent, not because she intended to live with her child.  Defendants noted that student status was not a protected category under the FHA or VPAA.

¶ 6.    Plaintiff opposed the motion but did not identify any disputed material facts.  She characterized defendants as arguing that the FHA and VPAA did not apply to their dwellings and claimed that this argument failed as a matter of law.  Alternatively, plaintiff asked the court to deny or delay ruling on the summary-judgment motion under Vermont Rule of Civil Procedure 56(d).  See V.R.C.P. 56(d) (providing that "[i]f a nonmovant shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or to take discovery; or (3) issue any other appropriate order").  Plaintiff asked the court for additional time to discover, among other things, if defendants had ever leased or subleased a dwelling to a nonstudent or allowed a nonstudent to occupy a dwelling; she also sought information on the characteristics of applicants who had been denied or accepted as occupants of the dwellings.  Plaintiff maintained that this information was relevant to her claim, based on circumstantial evidence, that she was qualified to rent the apartment.

¶ 7.    The court denied plaintiff's request to delay its decision and granted summary judgment to defendants.  It explained that defendants had met their initial summary-judgment burden of showing the absence of any disputes of material fact.  They filed a statement of undisputed material facts, which was amply supported by citations to and copies of the record. The burden therefore shifted to plaintiff to demonstrate a genuine dispute as to those facts, which plaintiff failed to do.  The court considered the additional discovery sought by plaintiff to be

3

relevant, at most, to three assertions of fact by defendants, none of which the court found material. The court thus found it unnecessary to determine if these particular facts were genuinely disputed. It deemed the remaining material facts set forth in defendants' statement to be undisputed for purposes of summary judgment. See V.R.C.P. 56(e)(2) (explaining that if party "fails to properly address another party's assertion of fact as required by [V.R.C.P.] 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

¶ 8. Defendant's undisputed material facts establish the following. The Redstone Apartments were conceived and built as student housing. They were, and always had been, student housing as reflected in the terms of the ground lease over time. Redstone's ground lease with UVM allowed only "Permitted Tenants" to live in the apartments, defined as "full time Junior, Senior, or Graduate Students as defined by University rules and regulations." In the event of a surplus of units, the lease set forth a process whereby the building owner could notify UVM and seek permission to rent to "[s]tudents at other area institutions of higher education who have achieved the status of Junior, Senior or Graduate Student as defined by University of Vermont requirements or their equivalent" or to "Other Tenants, but in no event shall they be college or University freshmen or sophomores, except students subletting who have completed their sophomore year may rent as tenants." Catamount and UVM considered tenants and occupants as the same and construed and applied these provisions to anyone living in the Redstone Apartments.

¶ 9. The apartments were leased on a room-by-room basis and every tenant needed to sign a lease for one bedroom. If a person wanted to rent more than one bedroom, that person needed to sign more than one lease. If a second occupant shared a single bedroom with a tenant or subtenant, or occupied a separate bedroom, that person also needed to be a "Permitted Tenant." UVM communicated to Catamount its position that only students were permitted to reside at Redstone properties.

4

¶ 10.    At the time plaintiff sought summer housing, she was a graduate student at Brandeis University with an upcoming internship at UVM Medical Center.  In mid-March 2018, plaintiff emailed Catamount to see if it would advertise that she was searching for summer housing for herself and her minor child.  An administrative assistant at Catamount informed plaintiff that plaintiff's request could not be accommodated because Catamount's housing was for students only.  Plaintiff understood at that time that Redstone's housing was for students only.

¶ 11.    Plaintiff nonetheless applied to sublet an apartment for herself and her daughter at the Redstone Apartments shortly thereafter.  Catamount's administrative assistant informed plaintiff that she could not process plaintiff's request because Catamount's "agreement with UVM does not allow us to have minors living on our property."  The court found this statement was not entirely accurate.  Minors were not prohibited because they were minors, but because most would not qualify as university students, let alone meet the junior, senior, or graduate-student requirement.

¶ 12.    Plaintiff sought clarification and in a follow-up message, Catamount's Director of Student Housing explained that pursuant to the lease agreement that residents held at the Redstone Apartments, no more than one person could occupy a bedroom unless a guest had been registered and guests were subject to overnight visitation limits.  The director stated that she could not approve any sublet arrangement that would increase the occupancy of a bedroom beyond the one-person limit and that the occupancy limits were set by UVM, the City of Burlington, and applicable residential codes.  She added that Redstone held a ground lease with UVM, referenced above, that specifically outlined its ability to operate a student-housing community on UVM's campus.  While UVM provided some flexibility for its students to sublet to non-UVM students during the summer term, it required that those subtenants be "students at other area institutions who have achieved the status of Junior, Senior, or Graduate Student."

5

¶ 13.    Based on these facts, the court turned to plaintiff's legal claim.  Plaintiff asserted that she was subjected to "disparate treatment," i.e., that "defendants intentionally discriminated against [a] member[] of a statutorily protected category because of [her] membership in that group."  Hum. Rts. Comm'n v. LaBrie, Inc., 164 Vt. 237, 243, 668 A.2d 659, 664 (1995).  Specifically, plaintiff alleged that her housing application was denied because of her familial status and because she intended to live in the rental unit with her minor child.  Plaintiff could establish the necessary discriminatory intent through direct or indirect evidence, and in the latter case, the burden-shifting standards first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), applied.  See LaBrie, 164 Vt. at 244 n.2, 668 A.2d at 665 n.2 (recognizing that "[i]n the absence of direct evidence of discrimination, we have applied the McDonnell Douglas burden-shifting framework"); see also United States v. Branella, 972 F. Supp. 294, 298 (D.N.J. 1997) (recognizing that where "plaintiff alleges discrimination as a result of disparate treatment—as opposed to disparate impact—a showing of impermissible intent is pivotal").

¶ 14.    The court concluded that plaintiff failed to establish a prima facie case of intentional, unlawful discrimination through direct or indirect evidence.  It rejected the argument that a housing policy based on student status was facially discriminatory, explaining that a prospective occupant's student status clearly was not a protected class.  It cited Whitaker v. New York University in support of this conclusion.  531 F. App'x 89, 90 (2d Cir. 2013) (concluding that university's "general policy of not providing on-campus dormitory housing to . . . dependents of [university] students (unless those . . . dependents [were] also [university] students)" was not "facially discriminatory, because the FHA d[id] not identify non-student status as a protected class"); see also Wilson v. Glenwood Intermountain Props., Inc., 98 F.3d 590, 594 (10th Cir. 1996) ("The Fair Housing Act does not make it unlawful for landlords to give preference to college students over non-students."); SPUR at Williams Brice Owners Ass'n, v. Lalla, 781 S.E.2d 115,

6

124 (S.C. Ct. App. 2015) (finding that restriction prohibiting rental to students was "wholly unrelated to any classification protected by state and federal housing laws").

¶ 15. The court also rejected plaintiff's argument that the March 2018 email from Catamount's administrative assistant provided direct evidence of discrimination. The court concluded that on its face the email—"[o]ur agreement with UVM does not allow us to have minors living on our property"—was not discriminatory as neither the federal nor state law made minority a protected class. Even if the statement could be construed as discriminatory, the court continued, it would clearly be a misstatement of UVM policy and thus would not constitute direct evidence of discrimination. The court also emphasized that the person who sent the email was not a decisionmaker.

¶ 16. Finding no direct evidence of discrimination, the court considered plaintiff's discrimination claim under the McDonnell Douglas framework. "This framework permits a plaintiff to make an initial showing of circumstantial evidence that gives rise to a presumption of illegality, and then the burden shifts to the defendant to present admissible evidence of a legitimate nondiscriminatory reason for the challenged action." LaBrie, 164 Vt. at 244 n.2, 668 A.2d at 665 n.2. A plaintiff then "has the opportunity to prove that the reasons asserted are mere pretext." Id.

¶ 17. The McDonnell Douglas "framework is designed to ensure that plaintiffs without direct evidence [of intentional discrimination] get their day in court." Id. Requiring a plaintiff to establish a prima facie case also "serves a screening function: it eliminates the most patently meritless claims—i.e., where the plaintiff was rejected for 'common nondiscriminatory reasons.' " Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 24, 176 Vt. 356, 848 A.2d 310 (quoting Texas Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 254 (1981)). "The evidentiary burden required of the plaintiff at this [first] stage is a relatively light one." Id.; see also Burdine, 450 U.S. at 254 (recognizing that burden at prima facie stage is "not onerous").

7

¶ 18. To establish a prima facie case of discrimination in this case, plaintiff needed to show that: (1) she was a "member[] of a protected class"; (2) she "sought and w[as] qualified to rent or purchase the housing"; (3) she "w[as] rejected"; and (4) "the housing opportunity remained available to other renters or purchasers." Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003); see also Robertson, 2004 VT 15, ¶ 25.

¶ 19. The court concluded that while plaintiff established that she was a member of a protected class as a parent with a minor child, she failed to show that she was "qualified to rent or purchase the housing." It likened this case to Whitaker, 531 F. App'x 89, where the plaintiff similarly argued that she was discriminated against based on familial status when New York University denied her request to live in a dormitory with her minor child. The Whitaker court rejected this argument, finding that the university had "proffered evidence that it provides dormitory housing to its students based on student status and has a longstanding policy of not providing housing for non-student family members." Id. at 91. The court explained that, while the plaintiff "would have been qualified to obtain on-campus housing if she sought to live alone, she did not qualify for on-campus housing for both herself and her son based on [the university's] objective criteria." Id. The trial court reached the same conclusion here.

¶ 20. Given plaintiff's failure to meet the second element of the McDonnell Douglas framework, the court deemed it unnecessary to consider the two remaining elements. The court reiterated that the alleged facts for which discovery was needed were not relevant to the determination of plaintiff's qualification. It noted that such evidence might be relevant to demonstrate pretext, but pretext was relevant only if plaintiff could meet her prima facie case, which she could not. The court entered partial summary judgment in defendants' favor and this appeal followed.

II. Arguments on Appeal

A. Prima Facie Case of Discrimination

8

### 1. Direct Evidence of Discrimination

¶ 21. We begin with plaintiff's challenges to the merits of the court's decision. Plaintiff maintains that she provided sufficient evidence to withstand summary judgment. She reiterates her assertion that the email from the Catamount administrative assistant provided direct evidence of discrimination. According to plaintiff, the email conveyed that plaintiff could not sublet an apartment with a minor even if that minor was her child. She contends that the statement by Catamount's Director of Student Housing "reinforced the discriminatory reason for the denial by referring to [plaintiff's] application as a request for 'approval to house a minor.' "

¶ 22. "[I]n reviewing a decision granting summary judgment, this Court applies the same standard as that applied by the trial court—the decision will be upheld if, viewing the evidence most favorably to the nonmoving party, there are no genuine disputed issues of material fact and the prevailing party is entitled to judgment as a matter of law." Burgess v. Lamoille Hous. P'ship, 2016 VT 31, ¶ 17, 201 Vt. 450, 145 A.3d 217. "Summary judgment is mandated where, after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which the party has the burden of proof at trial." Id. (quotation and alterations omitted). "Although the party opposing summary judgment is given the benefit of all reasonable doubts and inferences in determining whether there are disputed genuine issues of material fact, the moving party may not rely on bare allegations alone to meet the burden of demonstrating a disputed issue of fact." Id. (quotation omitted).

¶ 23. We conclude that plaintiff failed to provide direct evidence of discrimination. "Direct evidence of discriminatory treatment is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding that an illegitimate criterion actually motivated the adverse action." Thurmond v. Bowman, 211 F. Supp. 3d 554, 564 (W.D.N.Y. 2016) (quotation and alteration omitted); see also Treece v. Perrier Condo. Owners Ass'n, 593 F. Supp. 3d 422, 435 (E.D. La. 2022) ("Direct evidence is evidence which, if

believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." (quotation omitted)). There was no such showing here.

¶ 24. The Redstone Apartments are student housing. The undisputed facts show that on March 19, 2018, the Catamount administrative assistant told plaintiff that she could not post plaintiff's advertisement for a sublet because "our housing is for students only." It was undisputed that plaintiff understood as of that date "that Redstone's housing was for students only." When plaintiff nonetheless applied to sublet an apartment, the administrative assistant referenced the earlier email to plaintiff. The assistant informed plaintiff that her application could not be processed if she planned to sublet with her child because Catamount's ground lease with UVM did not allow Catamount to have minors living on the property. Plaintiff then asked that the basis for this policy be explained to her, which was done by Catamount's Director of Student Housing. The director explained that the housing was for students, as provided in the terms of the ground lease, and that UVM had confirmed this understanding.

¶ 25. Even if stated somewhat imprecisely by the administrative assistant, the undisputed facts establish that Catamount declined to process plaintiff's housing application because the Redstone Apartments were for students only and that plaintiff's minor child was not a student. No reasonable person could conclude otherwise. Plaintiff asks us to infer discriminatory intent by parsing out two sentences in the administrative assistant's second email and one sentence from a lengthy email by the Director of Student Housing, none of which directly state that the application was denied because of plaintiff's familial status. As plaintiff acknowledges, if inferences are required, the direct-evidence requirement is not satisfied. See Treece, 593 F. Supp. 3d at 435 ("Direct evidence is evidence which, if believed, would prove the existence of a fact (i.e., unlawful discrimination) without any inferences or presumptions." (quotation omitted)).

¶ 26. This case is not like those cited by plaintiff in support of her direct-evidence argument. See, e.g., Sec'y, U.S. Dep't of Hous. & Urb. Dev., ex rel. Karen Rounds, Charging

10

Party v. Frisbie, Fair Housing-Fair Lending (P-H) P 25,030, 1992 WL 406521, at *2 (May 6, 1992) (finding direct evidence of discrimination where owner told prospective rental applicant—a mother and her minor child—that "she did not rent to children"); Sec'y, U.S. Dep't of Hous. & Urb. Dev., ex rel. Rhonda K. Tilford, Charging Party v. Jeffre, Fair Housing-Fair Lending (P-H) P 25,020, 1991 WL 442788, at *6 (Dec. 18, 1991) (finding direct evidence of discrimination based on familial status where owner did not allow prospective tenant with child to "inspect and apply for the apartment," told applicant and "others that the apartment was available for singles only," and "stated that it is her policy not to rent to people with children"); cf. United States v. Badgett, 976 F.2d 1176, 1178 (8th Cir. 1992) (concluding in housing-discrimination case that trial court "failed to apply the McDonnell Douglas standard [applicable to circumstantial evidence claims], and therefore erred as a matter of law"). There is no similar direct evidence here. Given our conclusion, we need not address plaintiff's arguments that the statements at issue were not "stray" remarks and that defendant UVM should be held responsible for any misstatement made by the administrative assistant regarding UVM's housing policy.

2. Circumstantial Evidence of Discrimination

¶ 27. Plaintiff next argues that she presented sufficient circumstantial evidence to establish a prima facie case of discrimination. She maintains that she was qualified to rent an apartment "but for the eligibility requirement she challenges as discriminatory," which she identifies as the requirement that all occupants of the Redstone Apartments be post-secondary students. She contends that she need not comply with this requirement to establish a prima facie case of discrimination, citing Williams v. Matthews Co., 499 F.2d 819, 826 (8th Cir. 1974), and Treece, 593 F. Supp. 3d at 439. Plaintiff further contends that Whitaker compels a decision in her favor. Alternatively, she asks this Court not to consider Whitaker because it was wrongly decided

and it would improperly require her to show that her child was "qualified" to rent the apartment in question.

¶ 28. We conclude that these arguments are without merit. We reject plaintiff's assertion that she did not need to demonstrate that she was qualified to rent the apartment. "Under McDonnell Douglas, if a plaintiff is not objectively qualified . . . , then she cannot make out a prima facie case." Robertson, 2004 VT 15, ¶ 29. As the U.S. Supreme Court has explained, "[t]he method suggested in McDonnell Douglas" for assessing whether a person was subjected to intentional discrimination

> was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. A prima facie case under McDonnell Douglas raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.

Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978); see also Int'l Bd. of Teamsters v. United States, 431 U.S. 324, 358 n.44 (1977) (explaining that while "McDonnell Douglas formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought," and that "[e]limination of these reasons for the refusal to hire is sufficient, absent other explanation, to create an inference that the decision was a discriminatory one"); Kormoczy v. Sec'y, U.S. Dep't of Hous. & Urb. Dev. ex rel. Briggs, 53 F.3d 821, 823 (7th Cir. 1995) (recognizing that "the elements of familial discrimination follow closely the elements of employment discrimination").

¶ 29. To be entitled to an inference that defendants discriminated against her, plaintiff must show that she was qualified to rent the housing. She cannot do so here. As set forth above, the Redstone Apartments were established as student housing, have been consistently operated as

12

student housing, and plaintiff sought to live in the apartment with a nonstudent. She did not meet the rental criteria established for this housing. See Mancuso v. Douglas Elliman LLC, 808 F. Supp. 2d 606, 618 (S.D.N.Y. 2011) (stating that "[w]hen analyzing this prong of a prima facie case, courts have used as a starting point the applicable criteria that the owner has established regarding who is 'qualified,' " and discussing cases where "owner-established criteria . . . were not post-hoc rationales concocted to cover intentional discrimination" but were instead "objective requirements, often long-standing ones, clearly communicated to potential renters or purchasers of property that relate to that person's ability, financial or otherwise, to purchase or rent the property in question").

¶ 30. We are not persuaded to the contrary by the two cases cited by plaintiff, one of which appears to be a disparate-impact discrimination case, which unlike the disparate-treatment case here, does not require a showing of intentional discrimination. See Williams, 499 F.2d at 828 (concluding that "undisputed facts show that under the circumstances the alleged procedure of selling lots only to builders carried racial overtones, and such a policy, even though neutral on its face, cannot stand if it in its operation serves to discriminate on the basis of race"); see also Mountain Side Mobile Ests. P'ship v. Sec'y of Hous. & Urb. Dev., 56 F.3d 1243, 1250-51 (10th Cir. 1995) (explaining that "claim of disparate impact, unlike a claim of disparate treatment, does not require a finding of intentional discrimination," and "[t]o establish a prima facie case of disparate impact discrimination, plaintiffs must show that a specific policy caused a significant disparate effect on a protected group").[1]

---

[1] We note that plaintiff appears to raise a disparate-impact argument in her brief, challenging the effect on families of defendants' one-person-per-bedroom occupancy policy. We do not address this argument because, as the trial court found, she did not properly pursue a disparate-impact theory below.

13

¶ 31.    In the second case cited by plaintiff, Treece, 593 F. Supp. 3d at 439, the court recognized that "[t]o be 'qualified,' . . . a proposed tenant must meet the terms of the landlord," which "generally refers to the price and listing terms," or must comply "with stated conditions of housing." (quotation omitted) (quotation marks and brackets omitted).  The facts of Treece are complicated, somewhat convoluted, and distinguishable from those at issue here.  As that court recognized, "[t]he elements of a prima facie case vary depending on the facts and claims of the case." Id. at 439.

¶ 32.    In Treece, the tenants had moved into a condominium unit and it was undisputed they were deemed "qualified" by the unit owner who rented the unit to them.  The condominium was "subject to a facially neutral use and occupancy rule" that "require[d] 250 square feet per occupant of each unit," which was in place before the tenants rented their unit. Id. at 430.  In their housing-discrimination suit, the tenants asserted, among other claims, that the condominium association tried to evict them "using the occupancy limits and . . . harassment [that] f[ell] within the protections" of the FHA. Id. at 439.  More specifically, the court found that they raised an "intentional disparate treatment" claim against the association "for adopting occupancy limitations that have the intent . . . of making unavailable or denying housing to families with children." Id. at 428.[2]

¶ 33.    The Treece court concluded that the condominium association failed to show for purposes of summary judgment that the tenants were not qualified to rent the unit given that the tenants had been deemed qualified by the unit owner. Id. at 440.  It noted that "[t]he only disqualifying factors [the association] point[ed] to [were] the occupancy limits and the City's

_____

    [2]  This appears to be a disparate-impact theory as opposed to a disparate-treatment one. See, e.g., Quad Enters. Co. v. Town of Southold, 369 F. App'x 202, 206 (2d Cir. 2010) (explaining that "to establish a prima facie case of disparate impact, the plaintiff must provide evidence showing (1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices" (quotation omitted)).

ordinance against overcrowding." Id. The court observed that the tenants "directly challenge[d] the legality of the occupancy limits, and the challenged activity cannot defeat [the tenants'] prima facie case." Id. The court added that "the City's ordinance [did] not seem to be the sort of 'listing term[]' or 'stated condition' contemplated by the issue of housing qualification," and further, that the association provided no support for their summary assertion "that the City's overcrowding ordinance disqualified the [tenants] from renting" the unit in question. Id.

¶ 34. The phrase seized upon by plaintiff—that "the Plaintiffs direct challenge the legality of the occupancy limits, and the challenged activity cannot defeat [the] [p]laintiffs' prima facie case"—appears to relate to the precise legal claim brought by the plaintiffs in that case. The court did not provide any legal citations in support of this proposition as a general matter, and we do not find this approach persuasive under the facts presented here. It is contrary to the approach taken by the Second Circuit in Whitaker and it makes no sense applied to plaintiff's claim in this case. It would eliminate a key piece of the McDonnell Douglas analysis. See Furnco Constr. Corp., 438 U.S. at 579-80 (explaining that McDonnell Douglas prima facie showing "is simply proof of actions taken by the employer from which we infer discriminatory animus because experience has proved that in the absence of any other explanation it is more likely than not that those actions were bottomed on impermissible considerations").

¶ 35. We reject plaintiff's attempt to distinguish Whitaker. She asserts that in Whitaker, unlike the instant case, the university "proffered evidence that it provides dormitory housing to its students based on student status and has a long-standing policy of not providing housing for non-student family members." 531 F. App'x at 91. Plaintiff contends that defendants here failed to make a similar showing. That assertion is inaccurate. The record shows that defendants asserted and provided record support for their contention that housing at the Redstone Apartments has been limited to students from the outset. It is equally inaccurate for plaintiff to assert that she "produced evidence that UVM allowed a non-student to sublet an apartment for the summer as recently as

15

the summer of 2017." The affidavit referenced by plaintiff states that the person sublet her apartment to two individuals who were not UVM students but she did "not know if they were students of another college or university." In any event, as discussed in more detail below, we agree with the trial court that it was immaterial whether defendants had ever inadvertently rented to a non-UVM student given its well-established, student-only policies referenced above.

¶ 36. We conclude that Whitaker is persuasive and decline plaintiff's request to reject it as wrongly decided. We do not agree that applying the reasoning of Whitaker to other cases "would effectively gut the FHA's prohibition of familial status discrimination by creating a loophole that would allow all housing providers to lawfully refuse to deal with families with minor children." Defendants limit the housing at the Redstone Apartments to students and students are not a protected class under the FHA or VHFA. If a parent and child were both UVM students, they would be eligible to live at the Redstone Apartments. Plaintiff alleged that she was discriminated against based on her familial status, but plaintiff was not qualified to sublet a unit in the Redstone Apartments because she sought to secure housing for herself and a nonstudent. The nonstudent status of her child was relevant to the qualification criteria established by defendants.

B. Timing of Summary-Judgment Ruling

¶ 37. Finally, we turn to plaintiff's procedural arguments. Plaintiff asserts that the court prematurely granted summary judgment because the record was not fully developed regarding a material fact. She cites the court's rejection of her claim to be "qualified" to live at the Redstone Apartments, specifically, its explanation that plaintiff sought housing not only for herself, but for "her non-student daughter . . . in the face of a policy that requires that all residents be students." According to plaintiff, information as to whether defendants had ever permitted nonstudents to

16

reside with qualified tenants was material because it bore on whether defendants "had a policy of excluding all non-students."

¶ 38. Plaintiff fails to show that the court abused its discretion in denying her request. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994) ("A district court's denial of more time to conduct discovery pursuant to [Federal Rule of Civil Procedure] 56(f) is subject to reversal only if it abused its discretion."). As reflected above, defendants submitted a statement of undisputed material facts and provided evidence in support of their asserted facts. This includes the assertion that the Redstone Apartments were and always had been intended as student housing, which was supported by the permitting history and the terms of the ground lease. Defendants established that they have a policy of limiting use of the Redstone Apartments to students.

¶ 39. Plaintiff offered nothing to refute this assertion. Even if plaintiff were to discover that a nonstudent had been inadvertently allowed to live at the Redstone Apartments, this would not undermine the undisputed evidence proffered by defendants as to the long-established student-only policy for Redstone. We agree with the trial court that the question of whether defendants had ever rented a unit to a nonstudent was immaterial here.

¶ 40. We also reject plaintiff's assertion that there are inconsistencies in the record that support her request for additional discovery. Plaintiff cites to the same affidavit referenced above. According to plaintiff, the assertion that a unit was sublet to a non-UVM student draws into question the credibility of the evidence submitted by defendants. Credibility assessments are not conducted on summary judgment, however. See, e.g., Eastridge v. R.I. Coll., 996 F. Supp. 161, 165 (D.R.I. 1998) ("At the summary judgment stage, there is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood." (quotation omitted)). Defendants' material facts were supported by evidence in the record, they were undisputed by plaintiff, and they were appropriately accepted as true for purposes of

17

summary judgment as provided in Rule 56(c)(2). These facts support the court's summary-judgment decision and the court did not abuse its discretion in denying of plaintiff's request for additional discovery.

Affirmed.

FOR THE COURT:

_____

Chief Justice