Filed 09/05/24

VERMONT SUPERIOR COURT

Rutland Unit
83 Center St
Rutland VT 05701
802-775-4394
www.vermontjudiciary.org



CIVIL DIVISION

Case No. 24-CV-01091

---

Kaylee Atwood v. Leland Hill, Jr. et al

---

# FINDINGS AND ORDER

This is an ejectment action brought by Kaylee Atwood against defendants Leland Hill and Kimberly MacJarrett. The defendants brought a counterclaim against the plaintiff alleging retaliation, discrimination, habitability, intentional infliction of emotional distress, violation of the consumer fraud act, and failure to return the security deposit. The court held a final hearing in this matter on August 14, 2024. Prior to the hearing, the defendants had vacated the property, so plaintiff's only remaining claims was for damages. All parties represented themselves at the hearing. The court makes the following findings of fact based upon a preponderance of the evidence.

### Findings of Fact

Kaylee Atwood owns real property located at 264 Furnace Street in Pultney, Vermont. The parties executed a written lease agreement on December 1, 2023. The lease expired on March 1, 2024.[1] Pursuant to the lease, defendants were required to pay the plaintiff rent in the amount of $1,050 per month, due on the first of the month. The lease indicated that if rent was not paid within five days of the due date, a late fee of $250 would be imposed. The lease allows for this late fee to be applied for every day rent is late or the occurrence that rent was late. Both options are checked on the lease. Defendants provided the plaintiff a security deposit of $1,050. The lease prohibited defendant from having any pets on the property.

Defendants resided at the property from December 2023 through June 2024. Although the lease was signed on December 1, 2023, the defendants did not move into the property until December 15, 2023. The defendants vacated the property on June 15, 2024. Defendants paid $2,100 on December 15, 2023, which included the first month's rent and the security deposit. Ex. B-1. Defendants paid $1,050 on January 15, 2024 for the second month's rent. *Id.* Defendants paid $1,575 on February 7, 2024 for two months rent. Ex. B. The plaintiff provided $1,350 in rent credit during the tenancy. This was for work performed by Mr. Hill and $300 in expenses incurred by the defendants to remove trash from the property. The total amount of rent paid by the defendants in money and credit was $5,025. In addition, the defendants gave the plaintiff $1,050 as a security deposit. The total amount of rent defendants owed from December 2023 to June 2024 was $7,350.[2]

---

[1] The written lease indicates the lease ends on March 1, 2023. The court presumes this was an error and the parties intended the original lease to end on March 1, 2024.

[2] There was testimony regarding rent being prorated for December as the defendants did not move in until December 2023. The court's calculation runs from December 15, 2023 through June 15, 2024.

After the defendants vacated the property in June, the plaintiff observed damages to the property that had not been there prior to the tenancy. This included damage to a wooden floor, damage to the attic space, damages to drywall in a ceiling, damages to a wall in the kitchen, and holes in the wall on the third floor. In addition, plaintiff received a $900 water bill for a spigot that was left on. Plaintiff spent $100 on flea bombing the property, $50 for trash removal, and $2,000 for having some of the drywall repaired.

Plaintiff is seeking $61,117.96 in damages for property damage, trash removal, unauthorized painting, back rent, late fees, service fees, emotional distress, harassment, and loss of usage.

Plaintiff testified that after the defendants vacated the property, she sent notice to the defendants that she was keeping the security deposit due to the damage to the property. Defendants testified they never received a copy of the notice and plaintiff did not submit a copy of the notice at the hearing.

Prior to renting the property to the defendants, plaintiff told the defendants that there was a leak in the roof. Plaintiff did not have the roof fixed prior to renting the property to the defendants. Ex. A. Because the defendants did not move in until December 15, 2023, the parties discussed signing a new lease. Ex. D. The parties, however, never wrote or signed an amended lease. When the lease was signed, plaintiff was under the impression that the only tenants would be Mr. Hill, Ms. MacJarrett, and a baby. Additional children resided at the property and the plaintiff sent Mr. Hill a text message saying, "And you didn't mention u had all these kids it was suppose to be u and ur gf and the baby. Start looking for another place. Once your gone I will work on the place." Ex. G.

During the written lease agreement prohibiting pets, plaintiff knew that the defendants had dogs on the property and even asked the defendants if they wanted another dog. Ex. E.

Prior to the defendants moving in, Mr. Hill did some work on the plumbing at the property in order for the defendants to reside there. Mr. Hill testified that prior to moving in, there was garbage everywhere, dog feces on the wall, holes in the floor, no running water, and the heating system needed servicing. Plaintiff testified the house was livable when the defendants moved in. On January 1, 2024, the defendants informed the plaintiff that the stove was not working. Ex. J. The plaintiff provided the defendants a replacement stove.

Defendants are seeking double damages for plaintiff's failure to return their security deposit, $5,630 in damages from the plaintiff's testimony in a separate matter, triple damages for a violation of the consumer fraud act, $5,000 for retaliation, $5,000 for discrimination, $5,000 for intentional infliction of emotional distress, and $5,000 for health and safety violations for the leaking roof and plaintiff's refusal to fix it.

<u>Conclusions of Law</u>

*Plaintiff's Claims*

This action is governed by the requirements and terms of Vermont's Residential Rental Agreements Act, 9 V.S.A. § 4451 et seq. A "landlord may terminate a tenancy for nonpayment of rent by providing actual notice to the tenant of the date on which the tenancy will terminate." 9 V.S.A. § 4667(a). Actual notice is defined as "receipt of written notice hand-delivered or mailed to the last known address. A rebuttable presumption that the notice was received three days after mailing is created if the sending party proves that the notice was sent by first-class or certified U.S. mail." 9 V.S.A. § 4451(1). The date of termination shall be at least 14 days after the date of actual notice and at least 30 days after the date of actual notice if the property is a covered property under the federal CARES act. 9 V.S.A. § 4667(a); 15

U.S.C. §§ 9058(a)(2) and (c). "If the court finds that the landlord is entitled to possession of the premises, the plaintiff shall have judgment for possession and rents due, damages, and costs." 12 V.S.A. § 4854. In this case, the tenants have vacated the property, thus the court must determine whether the plaintiff is entitled to judgment for rents due, damages, and costs.

Plaintiff seeks damages for unpaid rent. Based upon the credible testimony, the court finds that the defendants paid at total of $5,025 in rent, either through credit or actual monies paid. The defendants resided at the property for seven months and owed rent in the amount of $1,050 per month. The total rent defendants were obligated to pay was $7,350. Defendants still owe the plaintiff rent in the amount of $2,325.

Defendants argue they were not required to pay rent due to habitability issues with the property. The Vermont Supreme Court in *Hilder v. St. Peter,* held "in the rental of any residential dwelling unit an implied warranty exists in the lease, whether oral or written, that the landlord will deliver over and maintain, throughout the period of the tenancy, premises that are safe, clean and fit for human habitation." 144 Vt. 150, 159 (1984). This warranty of habitability is codified in Vermont's Residential Rental Agreements Act. 9 V.S.A. § 4457(a). In this case, the defendants allege that the leaking roof breach the warranty of habitability.

When a landlord breaches the warranty of habitability, a tenant's remedy is limited by the Residential Rental Agreements Act, which states:

(a) If the landlord fails to comply with the landlord's obligations for habitability and, after receiving actual notice of the noncompliance from the tenant, a governmental entity or a qualified independent inspector, the landlord fails to make repairs within a reasonable time and the noncompliance materially affects health and safety, the tenant may:
   1. withhold the payment of rent for the period of noncompliance;
   2. obtain injunctive relief;
   3. recover damages, costs, and reasonable attorney's fees; and
   4. terminate the rental agreement on reasonable notice.
(b) Tenant remedies under this section are not available if the noncompliance was caused by the negligent or deliberate act or omission of the tenant or a person on the premises with the tenant's consent.

9 V.S.A. § 4558. Before a tenant can withhold rent for a breach of the warranty of habitability, the tenant must 1) provide actual notice of the breach to the landlord and 2) allow the landlord a reasonable amount of time to cure the breach. *Id.* Actual notice is defined as "receipt of written notice hand-delivered or mailed to the last known address. A rebuttable presumption that the notice was received three days after mailing is created if the sending party proves that the notice was sent by first-class or certified U.S. mail." 9 V.S.A. § 4451(1).

In this case, the court assumes without deciding that the defendants provided actual notice of the leaking roof to the plaintiff by sending the plaintiff a text message. Ex. A. It is unclear from the evidence, however, when this text message was sent. The exhibit itself does not have a date the message was sent and Mr. Hill did not testify when it was sent either. Tenants are allowed to withhold rent for a breach of the warranty of habitability only after allowing the landlord a reasonable amount of time to cure the breach. 9 V.S.A. § 4558. Without knowing the date the notice was sent, the court cannot make any findings whether the landlord was provided sufficient time to cure the breach prior to the defendants

withholding rent. The defendants have not met their burden to show they were entitled to withhold rent due to a breach of the warranty of habitability.

Plaintiff seeks to recover late fees of $250 per day for each day the rent was late. In this case, the lease indicates the late fee is to be applied for every day rent is late as well as for the occurrence that rent was late. Both boxes are checked on the lease and are contradictory and that contradiction cannot be resolved by reading the lease as a whole. "When two provisions of a contract conflict, and we are unable to resolve this conflict when reading the contract as a whole, then the contract is ambiguous." *Beldock v. VWSD, LLC,* 2023 VT 35, ¶ 40. When a contract is ambiguous, the court "may look to limited extrinsic evidence of circumstances surrounding the making of the agreement to see if this resolves the ambiguity." *Id.* at ¶ 40 (citations and quotations omitted). There was no testimony presented by the parties on this contradiction and the court cannot resolve the ambiguity. "When an agreement is ambiguous, the parties' intent becomes a question of fact." *Id.* at ¶ 50. Based upon the evidence presented, the court cannot conclude what the intent of the parties was regarding the late fee. It is the burden of the plaintiff to prove her claim and she has failed to prove the late fee was to accrue daily. The plaintiff is not entitled to relief on this claim.

In addition to damages for rent due, plaintiff seeks compensation for damage to the property that occurred during the defendant's tenancy. Plaintiff testified to multiple areas that were damage and speculated about the cost of repairs. An owner of real property is competent to testify as to the value of the property. 12 V.S.A. § 1604. An owner cannot testify about repair estimates they receive from third parties as that would be inadmissible hearsay. *State v. Morse,* 2014 VT 84, ¶ 13. Although the plaintiff testified about estimates to repair some of the damage, the court does not consider that testimony. The testimony the court can consider is the amount of money the plaintiff had already paid to repair damage to the property. This includes $100 for flea bombing, $50 for trash removal, and $2,000 for drywall repairs. The court concludes these expenses were in response to damage to the property that went above and beyond normal wear and tear and the plaintiff is entitled to recover these costs. *See Mongeon Bay Properties, LLC v. Mallets Bay Homeowner's Ass'n,* 2016 VT 64, ¶ 32 (landlords are not entitled to recover damages for normal wear and tear). Plaintiff also seeks compensation for a $900 water bill. There was insufficient evidence regarding when the bill was accrued and what caused it. Although plaintiff alleges the bill was due to a spigot being left open, that conclusory statement is not enough for the court to conclude the defendants caused the water bill. Plaintiff has proven she is entitled to damages in the amount of $2,150.

Plaintiff seeks compensation for alleged unauthorized painting conducted by the defendants. There is nothing in the written lease that prohibits defendants from painting the walls of the property. Plaintiff has not met her burden on this claim.

Plaintiff seeks damages for harassment, emotional distress and loss of usage of the property. Plaintiff did not provide notice of these claims in her complaint, thus the court cannot grant relief on these requests. Even if they had been properly noticed in the complaint, plaintiff did not provide evidence regarding these claims at the hearing. Plaintiff has not met her burden on these claims.

In ejectment cases, "[i]f the court finds that the plaintiff is entitled to possession of the premises, the plaintiff shall have judgment for possession and rents due, damages, and costs, and when a written rental agreement so provides, the court may award reasonable attorney's fees. 12 V.S.A. § 4854. Plaintiff is entitled to possession of the property, thus is entitled to costs. The cost for filing a complaint in the Civil Division is $295. 32 V.S.A. § 1431(b)(1). There was no evidence regarding the costs incurred by plaintiff for service fees. Plaintiff is therefore entitled to $295 for the court costs.

In summary, plaintiff is entitled to $2,325 for unpaid rent, $2,150 for damages to the property, and $295 for costs. The total amount of damages owed to the plaintiff is $4,770.

*Defendants' Claims*

Defendants first seek double damages due to plaintiff's failure to return their security deposit. This claim is governed by the Residential Rental Agreements Act and specifically 9 V.S.A. § 4461(e), which states:

> If a landlord fails to return the security deposit with a statement within 14 days, the landlord forfeits the right to withhold any portion of the security deposit. If the failure is willful, the landlord shall be liable for double the amount wrongfully withheld, plus reasonable attorney's fees and costs.

The goal of the court in construing a statute is to implement the intent of the Legislature. *Miller v. Miller,* 2005 VT 89, ¶ 14. "If the intent of the Legislature is apparent on the face of the statute because the plain language of the statute is clear and unambiguous, we implement the statute according to that plain language." *Flint v. Dep't. of Labor,* 2017 VT 89, ¶ 5. Under Section 4461(e), if a landlord willfully withholds a security deposit in violation of the statute, they **shall** be liable for double the amount wrongfully withheld, plus reasonable attorney's fees and costs. "[T]he imperative 'shall' generally means that the provision is mandatory." *State v. Lohr,* 2020 VT 41, ¶ 8. Thus, if the court finds that defendants willfully withheld the security deposit in this case, the court is required to find the defendants liable for double the amount wrongfully withheld and is required to find the defendants liable for reasonable attorney's fees and costs.

A landlord is held to strict compliance with Section 4461 and is explicitly required to "return the security deposit along with a written statement itemizing any deductions to a tenant within 14 days." 9 V.S.A. § 4461(c); *In re Soon Kwon,* 2011 VT 26, ¶ 14. The statute does not define the term willful as applied to Section 4461. However, the Vermont Supreme Court has stated, "[t]he term 'wilful' though given different definitions under different circumstances cannot well mean less than intentional and by design." *In re Chase*, 2009 VT 94, ¶ 26 (quoting *State v. Burlington Drug Co.,* 84 Vt. 243, 252 (1911)). In other words, willful "means an act done with intention of purpose, designed and voluntary." *Id.* at ¶ 26 (quoting *Wendell v. Union Mut. Fire Ins. Co.,* 123 Vt. 294, 297 (1963).

In this case, the court finds credible the testimony of Mr. Hill that the defendants did not receive a written statement itemizing any deductions to the security deposit within 14 days of the termination. There was conflicting testimony to this, however the plaintiff did not submit a copy of the statement she sent to the defendants. Furthermore, even accepting plaintiff's testimony as true that a notice went out, the plaintiff's testimony was limited to the security deposit was not going to be returned because of damages. Such a generic statement does not meet the requirement of an itemization of deductions. The plaintiff has not strictly complied with the requirements of 9 V.S.A. § 4461(c) and the decision by the plaintiff to withhold the security deposit was clearly willful. The defendants are entitled to damages in the amount double the security deposit. Defendants are entitled to $2,100 on this claim.

Defendants seek $5,630 in damages due to plaintiff's testimony in a separate matter. Defendants have cited no authority for the court to grant this relief. Assuming the argument is that the plaintiff perjured herself in that prior case, the defendants have presented no evidence of that alleged perjury. The defendants are not entitled to relief on this claim.

Defendants seek $5,000 for discrimination due to the statement by plaintiff stating, "[a]nd you didn't mention u had all these kids it was suppose to be u and ur gf and the baby. Start looking for another place. Once your gone I will work on the place." Ex. G. Individuals seeking housing are protected from discrimination by the federal Fair Housing Act (FHA), 42 U.S.C. § 3604(a) and the Vermont Public Accommodations Act (VPPA, 9 V.S.A. §§ 4500-4507. Under the FHA it is unlawful "[t]o refuse to ... rent after the making of a bona fide offer, or to refuse to negotiate for the ... rental of, or otherwise make unavailable or deny, a dwelling to any person because of ... familial status." 42 U.S.C. § 3604(a). Under the VPPA it is unlawful "[t]o refuse to ... rent, or refuse to negotiate for the ... rental of, or otherwise make unavailable or deny, a dwelling or other real estate to any person ... because a person intends to occupy a dwelling with one or more minor children." 9 V.S.A. § 4503(a)(1). The evidence presented at the hearing does not show that the plaintiff refused to rent to the defendants because they have multiple children. The statement of plaintiff alone is insufficient to find any direct evidence of discrimination.

When there is no direct evidence of discrimination, a party may still prove discrimination under the burden shifting standards set forth in *McDonnell Douglas Corp v. Green,* 411 U.S. 792 (1973). In this framework, the moving party has the burden to establish a prima facie case of discrimination based upon circumstantial evidence. *Spinette v. University of Vermont,* 2023 VT 12, ¶ 16. If the moving party establishes a prima facie case, the burden shifts to the non-moving party to show the reason for the action was nondiscriminatory. *Id.* "To establish a prima facie case of discrimination in this case, plaintiff needed to show that: (1) she was a 'member[ ] of a protected class'; (2) she 'sought and w[as] qualified to rent or purchase the housing'; (3) she 'w[as] rejected'; and (4) 'the housing opportunity remained available to other renters or purchasers.'" *Id.* at ¶ 18 (quoting *Mitchell v. Shane,* 350 F.3d 39, 47 (2d Cir. 2003)). In this case, the defendants have failed to prove they were rejected from housing because of their children. The statement made by the plaintiff came after the defendants were already tenants. The defendants did not present any evidence they were rejected by the plaintiff. As such, the defendants have failed to meet their burden to establish a prima facie case that would shift the burden to the defendant. In addition, the evidence showed that the plaintiff did not intend to immediately rent the property out after the defendants vacated. Instead, the plaintiff intended to fix the property and sell it. The defendants are not entitled to relief on this claim.

Defendants seek $5,000 in damages for a claim of retaliation. The Residential Rental Agreement Acts prohibits a landlord from engaging in retaliatory action, specifically:

> A landlord of a residential dwelling unit may not retaliate by establishing or changing terms of a rental agreement or by bringing or threatening to bring an action against a tenant who:
> (1) has complained to a governmental agency charged with responsibility for enforcement of a building, housing, or health regulation of a violation applicable to the premises materially affecting health and safety;
> (2) has complained to the landlord of a violation of this chapter; or
> (3) has organized or become a member of a tenant's union or similar organization.

9 V.S.A. § 4465(a). Nonrenewal of a lease can qualify as an action under this statute. *Houle v. Quenneville,* 173 Vt. 80, 88 (2001). Tenants have the burden of proving a retaliatory eviction. *Id.* at 90-91. In looking at all the facts and circumstances between the parties as required by *Gokey v. Bessette,* 154 Vt. 560, 564 (1990), the court cannot conclude the defendants have met their burden to show the nonrenewal of the lease was retaliatory. As noted above, the court was unable to make findings regarding when the plaintiff was put on notice of habitability concerns of the defendants. Similarly, the evidence here showed that the

main concern of the plaintiff was non-payment of rent. Based upon the evidence presented at the hearing, the court cannot find the defendants have met their burden to prove the plaintiff failed to renew the lease because of retaliation. The defendants are not entitled to relief on this claim.

Defendants seek $5,000 for intentional infliction of emotional distress. The four essential elements a party must prove to establish a prima facie case of intentional inflictions of emotional distress are "outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Sheltra v. Smith,* 136 Vt. 472, 476 (1978). Defendants have failed to identify the plaintiff's alleged outrageous conduct in this case. More importantly, the defendants failed to present evidence of their extreme emotional distress at the hearing. Without this requisite evidence, the defendants cannot meet their burden on this claim. The defendants are not entitled to relief on this claim.

Defendants seek $5,000 for health and safety violations. Specifically, defendants seek damages for the leaking roof and the plaintiff's refusal to fix it. Although the defendants proved that they gave notice of the issue and the plaintiff did not fix it, the defendants did not prove when that notice was sent. Without that fact established, the defendants cannot meet their burden on this allegation and they are not entitled to relief on this claim.

Defendants seek triple damages for a violation of the Consumer Fraud Act (CFA). The purpose of the CFA is "to protect the public against unfair or deceptive acts or practices and to encourage fair and honest competition." *Sawyer v. Robson,* 2006 VT 136, ¶ 12 (citations and quotations omitted). Landlords are subject to the requirements of the CFA. *Id.* at ¶ 13. Under the CFA:

> Any consumer who ... sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title ... may sue for appropriate equitable relief and may sue and recover from the seller, solicitor or other violator the amount of his damages ....

9 V.S.A. § 2461(b). The basis of defendants claim under the CFA is the preexisting leaking roof. The defendants were aware of the leaking roof when they entered the lease with the plaintiff. This is evident from the testimony of Mr. Hill and the text message contained within Exhibit A. There was no fraud or deceit on the part of the plaintiff. The court does not find that the plaintiff promised the roof would be fixed prior to the tenancy starting. The defendants have not met their burden and they are not entitled to relief on their claim.

In summary, defendants are entitled to $2,100 on their claim regarding the plaintiff's failure to return the security deposit.

<u>Conclusion</u>

Plaintiff is entitled to damages in the amount of $4,770. Defendants are entitled to damages in the amount of $2,100. Offsetting the amount owed the defendants, plaintiff is entitled to judgment in the amount of $2,170.

Electronically signed on September 5, 2024 pursuant to V.R.E.F. 9(d)

_____
Alexander N. Burke
Superior Court Judge